## WESSON v. UNITED STATES.
### No. 13476.

Circuit Court of Appeals, Eighth Circuit.

Nov. 4, 1947.

Langdon R. Jones, of Kennett, Mo., and L. V. Rhine, of Paragould, Ark., for appellant.

Warren E. Wood, Asst. U. S. Atty., of Little Rock, Ark. (James T. Gooch, U. S. Atty., of Little Rock, Ark., on the brief), for appellee.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

A jury convicted appellant of two narcotics-laws violations, under section 2554 (a) and (g) of the Internal Revenue Code, 53 Stat. .272, 273, 26 U.S.C.A. Int.Rev. Code, § 2554(a) and (g). The court im-posed a general sentence of 5 years imprisonment and a $1,000 fine.

Appellant was a physician, practicing at Marmaduke, Arkansas, a town of 600 to 800 people, and in the surrounding rural area. He filled his own prescriptions and had duly paid the special tax and made the registration necessary for dispensing or administering narcotics medicinally, under 26 U.S.C.A.Int.Rev.Code, §§ 3220(d), 3221 (a).

The indictment was in four counts. The jury found appellant guilty on Counts II and III and not guilty on Counts I and IV. Count I charged that appellant had kept a false and fraudulent record of the morphine sulphate and tincture of opium dispensed by him, not to persons upon whom he was personally attending, during a specified period, in violation of 18 U.S. C.A. § 80. Count IV charged that on a certain date he had illegally sold some morphine sulphate tablets to one Joseph M. Buchanan, in violation of 26 U.S.C.A.Int. Rev.Code, § 2554.

Count II charged that, between June 21, 1943, and May 10, 1945, appellant sold, bartered, exchanged or gave away, to persons and in quantities unknown, a specified gross amount of morphine sulphate cubes, of morphine sulphate tablets and of tincture of opium, not in good faith and not in the course of his professional practice and not in pursuance of written orders of such unknown persons on a form issued by the Secretary of the Treasury for that purpose, all in violation of 26 U.S.C.A.Int.Rev.Code, § 2554.[1]

Count III charged that, between June 21, 1943, and May 10, 1945, appellant obtained, by means of forms issued by the

[1] 26 U.S.C.A. Int.Rev.Code, § 2554(a): "General requirement. It shall be unlawful for any person to sell, barter, exchange, or give away any of the drugs mentioned in section 2550(a) except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary." Subsection (c) excepts from the foregoing provision the dispensing or distribution of any such drugs to a patient by a physician in the course of his professional practice only, provided a prescribed record is kept thereof, "except such as may be dispensed or distributed to a patient upon whom such physician * * * shall personally attend;" and it also excepts the dispensing or distribution by a dealer to a consumer "under and in pursuance of a written prescription issued by a physician * * * registered under section 3221," provided the prescription is signed by the physician and is dated as of the date when signed and such prescriptions are preserved and are kept accessible for a two-year period.

Secretary of the Treasury for that purpose, drugs mentioned in 26 U.S.C.A.Int.Rev. Code, § 2550(a) ["opium, * * * any compound, salt, derivative, or preparation thereof"], for purposes other than the use, sale or distribution thereof by him in the conduct of a lawful business in said drugs or in the legitimate practice of his profession, in violation of 26 U.S.C.A.Int.Rev. Code, § 2554(g).²

■ The first question for determination is whether any of the illegal sales charged in Count II and any of the illegal uses of order forms charged in Count III were barred by the statute of limitations. The indictment was returned on September 9, 1946. It charged offenses in both of the convicted counts extending from June 21, 1943, to May 10, 1945, and the instructions permitted the jury to convict on Count II for any illegal sale or sales, and on Count III for any illegal use or uses of order forms, which under the evidence might be found to have occurred at any time during that period. We think the court erred in allowing the jury to consider and return a verdict on the basis of any illegal sales or any illegal uses of order forms which had occurred prior to September 10, 1943.

In 26 U.S.C.A.Int.Rev. Code, § 3748, the following limitations are provided: "No person shall be prosecuted, tried, or punished, for any of the various offenses arising under the internal revenue laws of the United States unless the indictment is found or the information instituted within three years next after the commission of the offense, except that the period of limitation shall be six years—(1) for offenses involving the defrauding or attempting to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner, (2) for the offense of willfully attempting in any manner to evade or defeat any tax or the payment thereof, and (3) for the offense of willfully aiding or assisting in, or procuring, counselling, or advising, the preparation or presentation under, or in connection with any mat-

ter arising under, the internal revenue laws, of a false or fraudulent return, affidavit, claim, or document * * *. For offenses arising under section 37 of the Criminal Code, March 4, 1909, 35 Stat. 1096 (U.S.C., Title 18, § 88), where the object of the conspiracy is to attempt in any manner to evade or defeat any tax or the payment thereof, the period of limitation shall also be six years. * * *"

■ Illegal sales of narcotics or uses of order forms to obtain narcotics for unlawful purposes, as prohibited by 26 U.S.C.A. Int.Rev.Code, § 2554, are not within any of the exceptions for which a six-year limitation is provided in 26 U.S.C.A.Int. Rev.Code, § 3748, and are therefore subject to the general three-year limitation of the section. And each separate sale of narcotics or each separate use of an order form to obtain narcotics, unlawfully made, is a distinct offense under the statute. Cf. Blockburger v. United States, 284 U.S. 299, 301, 302, 52 S.Ct. 180, 76 L.Ed. 306. Such sales or uses of order forms, though multiplied, do not constitute a continuous offense (except as the Government might be at liberty to so deal with them in relation to the crime of a conspiracy), for "The Narcotic Act does not create the offense of engaging in the business of selling the forbidden drugs [or the business of improperly using order forms to obtain them], but penalizes any sale made in the absence of * * * the qualifying requirements set forth [in the statute, and any use of an order form to obtain them for improper purposes]." Id., 284 U.S. at page 302, 52 S.Ct. at page 181, (Matter in brackets added.)

Evidence of the amount of purchases and of dispositions made during a reasonable period prior to the offense charged might be material and helpful in some situations to assist in establishing the amount of narcotics which the accused had on hand at the time of the offense or the amount which he had been using generally in relation to his practice, as factors of probability in

---

² 26 U.S.C.A. Int.Rev.Code, § 2554(g): "Unlawful use [of order forms.] It shall be unlawful for any person to obtain by means of said order forms any of the aforesaid drugs for any purpose oth-

er than the use, sale, or distribution thereof by him in the conduct of a lawful business in said drugs or in the legitimate practice of his profession."

connection with the other evidence in the case on whether his charged subsequent uses of order forms were made to obtain narcotics for purposes "other than the use, sale, or distribution thereof by him in the conduct of a lawful business in said drugs or in the legitimate practice of his profession," and whether there had been dispositions as charged that were not legitimate and duly recorded prescriptions and had not been "dispensed or distributed to a patient upon whom such physician * * * shall personally attend." But that was neither the basis of admitting the evidence here nor the limitation of its use.

The error in having included the period from June 21, 1943, to September 9, 1943, in the two counts involved as a basis for conviction would not, however, entitle appellant to a dismissal of the indictment or to a judgment of acquittal notwithstanding the verdict, as he contends. He was only entitled to have had the court remove the period against which the statute of limitations had run from the consideration of the jury as a basis for conviction.

It is contended that, because the jury acquitted appellant on the charge in Count I of having kept a false and fraudulent record of his dispensings, there was no basis on which it could consistently convict him on Counts II and III. The argument is that, if the jury, as appellant says it must have done, accepted his version and interpretation of his records and believed his testimony that all his prescriptions were legitimate medical dispensings and the amount of narcotics unaccounted for on his records had been used by him only in good faith personal administerings to patients whom he personally attended, then his uses of the order forms and his dispositions of the narcotics could not have been illegal.

It is sufficient here to say in answer merely that the charges of keeping false and fraudulent records, of using order forms to obtain narcotics for unlawful purposes, and of making illegal sales, were separate and distinct offenses under the statute; that they would have been entitled to have been charged in separate indictments, if the Government had so elected; that, if they had been so charged and separately tried, an acquittal on one would in no way have been res judicata of any fact involved in the proof of either of the others; that the Government therefore could have established and relied upon the fact of appellant's records being false, in its contentions and proof of the charges in Counts II and III, even though appellant might previously have been acquitted of the charge in Count I; that the jury trying Count II or Count III in such a situation would have the right to accord the records such significance as evidence and facts, for purposes of the charge being tried, as it deemed them entitled to receive; and that the jury in the present case, trying the three counts together, was no more legally bound by its actions on Count I, in relation to its actions on the evidence and facts under Counts II and III, than a separate jury would have been. Cf. Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356, 80 A.L.R. 161. Any inconsistency therefore by the jury in its verdict on the separate counts of the indictment would not entitle appellant to a new trial. Downing v. United States, 8 Cir., 157 F.2d 738; Pilgreen v. United States, 8 Cir., 157 F.2d 427.

It might be added, though there is perhaps no necessity for doing so, that incidentally the charges in Counts II and III did not rest wholly upon appellant's records. And all the evidence taken together, in its facts and inferential implications, clearly is so substantial as a basis for the convictions that no appellate purpose can be served by undertaking to recite it.

Appellant contends that various evidence was erroneously admitted. Thus, a witness for one of the largest pharmaceutical houses in the country was permitted to testify that the number of morphine tablets purchased by the average doctor was from 200 to 500 ¼-grain tablets per year. A doctor with a general country practice, in a locality in Arkansas comparable to that in which appellant resided, who detailed the nature and extent of his practice, was permitted to testify to the amount of morphine tablets which it was necessary for him to purchase in his practice during the period covered by the indictment. Similar

testimony by a number of other representative doctors in the State was admitted, some of whom filled their own prescriptions and some of whom did not, but all of whom sufficiently detailed the nature of their practice and the uses they made of the drug to afford the jury a fair opportunity for comparison. One of these doctors who did not fill his own prescriptions testified in effect that substantially all his prescriptions were taken to and filled by a certain druggist, and this druggist was permitted to testify to what the number of the doctor's narcotic prescriptions during the period had been. A pharmacist from a drug store serving approximately 10,000 people was permitted to testify that the ratio of general medical prescriptions in the store to prescriptions containing narcotics ran 9 to 1.

■ We think all of this evidence was competent and of probative value. During the period covered by the indictment, appellant was shown to have bought narcotics equivalent to a total of 45,708 ¼-grain doses of morphine sulphate, which would have enabled him to dispense or administer narcotics in that time equivalent to more than 69 ¼-grain doses of morphine sulphate per day. There was evidence that the ordinary dose of morphine sulphate was ¼ grain. In the technical field involved, it was proper to admit evidence from which the significance of the various figures brought out on the trial could be evalued by the jury through practical, relevant and fair comparisons. Such evidence as is referred to above has been recognized as proper in a number of narcotics cases, as,

for example, Friedman v. United States, 6 Cir., 260 F. 388, 391, 392;[3] United States v. Direct Sales Co., D.C.W.D.S.C., 44 F.Supp. 623, 625, 626, affirmed 4 Cir., 131 F.2d 835, affirmed 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674. It must, of course, be sufficiently representative and unindividualistic so that it will not be likely to mislead. Thus, in C. M. Spring Drug Co. v. United States, 8 Cir., 12 F.2d 852, 858, the court apparently regarded as too remote and misleading a comparison between the narcotic sales of a drug company at Little Rock, Arkansas, and those of the defendant in the mining center of Joplin, Missouri.

Complaint is made of other evidence admitted by the trial court, which we think should have been excluded. A doctor was permitted to answer the following question: "In your opinion, can a reputable physician in a town of several hundred people dispense and administer in a period of twenty-three months, in the course of a bona fide practice only, as much as 35,000 ¼-grain tablets of morphine sulphate?" There was no evidence from which the jury could find that appellant dispensed or administered 35,000 ¼-grain tablets of morphine sulphate but only the equivalent thereof, mostly in a different form. But ignoring this and assuming that the words "as much as" would be understood by the jury to mean "the equivalent in narcotics of," and also ignoring the barb in the use of the word "reputable," the question was fundamentally objectionable as an attempt to get before the jury the fact, even though not in express terms, that in the opinion of the witness appellant was guilty. We do not

---

[3] "Evidence was received to show comparison between the Thompsons' prescriptions and those of a number of other druggists in Memphis during the period stated. * * * Within this period the Thompsons purchased of the two drug companies named in the second count about 20 times as much morphine as was purchased by any other retail druggist appearing in the record, and something like 60 times as much as was bought by the average retail druggist doing a larger general business in Memphis. * * * "

"* * * It is said that evidence was inadmissible to show the quantities of narcotic drugs purchased and sold, as

also the quantities of nonnarcotic drugs sold, by other druggists. Such evidence was calculated to furnish a fair test of the true nature and purposes of the Thompson business. It is not suggested, much less shown, that there was anything peculiar to the business of the other and neighboring druggists in Memphis which would differentiate their business from any legitimate drug business; and it cannot be doubted that the purchases and sales involved in the business of each of a number of different druggists in the vicinity would afford appropriate means of testing the character of the particular drug business under inquiry." 6 Cir., 260 F. at pages 391, 392.

believe that there can be any doubt that the purpose and effect of the question were to have the doctor advise the jury, with his professional prestige, that he thought that a physician who ordered and used that much narcotics within the period involved was making an illegal disposition of the drugs. Clear evidence had already been introduced on the fact of the amount of such narcotics which a physician ordinarily would require and use in his personal administerings and in his dispensings or prescribings—evidence which had been carried to the point of what would be a specifically comparable locality and type of practice to that of appellant.

Ordinarily there is no reason to admit opinion evidence on a matter that is fully capable of proof and comprehension from available fact testimony. And any such unnecessary opinion evidence in a criminal case that will inescapably be a plain expression of the witness' opinion of the defendant's guilt, even though by circumlocution, should be scrupulously avoided. In the present case, as we have indicated, there was no reason to allow the witness to express his opinion upon the question asked, either as a matter of lack of other proof of the fact involved or as a necessary aid in understanding such other proof, and the admisssion of the opinion evidence was in our opinion prejudicial.

Again, three witnesses representing separate wholesale drug companies, from which appellant had purchased narcotics, were permitted to testify in answer to a direct question that, if the company which the particular witness represented had received orders from appellant for all of the narcotics which he purchased, it would not have filled the orders. The question as asked was improper. It was directed specifically to what the drug companies would have done in appellant's case and not to what they would have done generally and so merely served the purpose of pointing the finger at appellant and not of indicating any general fact. If there were standards or limitations on narcotics in the wholesale drug business that were sufficiently general so that they could reasonably be expected to be familiar to the trade, or if the three particular drug companies had individual standards or limitations of which they had informed appellant, this might be relevant on the question of appellant's good faith in relation to the scattering of his purchases. But what some drug company might do hypothetically in a particular situation and not on the basis of some general recognized standard would hardly be material or competent to intensify that issue and to aid in convicting.

Finally, it is contended that the court incorrectly stated in its instructions the amount of morphine sulphate which the jury might find that appellant was short in his records if it believed the Government's evidence. Since that will be a matter which on a retrial will depend upon the evidence produced at the time, there is no need to consider the question here.

The judgment is reversed and the cause remanded for a new trial.