UNITED STATES of America, Appellee,

v.

**Wallace H. ECKMANN, Appellant.**

**No. 80–1665.**

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1981.

Decided Aug. 10, 1981.

Robert Vogel, Grand Forks, N. D., for appellant.

James R. Britton, U. S. Atty., James S. Hill (argued), Lynn E. Crooks, Asst. U. S. Attys., Bismarck, N. D., for appellee.

Before LAY, Chief Judge, ROSS, Circuit Judge, and ROBINSON,* District Judge.

ROSS, Circuit Judge.

Wallace H. Eckmann appeals his conviction on one count of receiving stolen merchandise knowing the same to be stolen in violation of 18 U.S.C. § 2315. We reverse.

Wallace H. Eckmann purchased three pieces of stolen machinery, two tractors and a wheel loader from Roland Edward Mathis a/k/a Jake Mathis. At trial the evidence established that the machinery was stolen, had been transported in interstate commerce and had a value of $5,000 or more. *See* 18 U.S.C. § 2315. The main issue for the jury to resolve in regard to Eckmann was whether he had purchased the machinery "knowing the same to have been stolen" in violation of 18 U.S.C. § 2315.

On appeal, Eckmann raises as error the following issues: (1) improper joinder of defendants; (2) violation of the "spill-over" doctrine; (3) refusal to restrict certain evidence, which was inadmissible as to Eckmann, to its proper scope under Rule 105 of the Federal Rules of Evidence; (4) improper cross-examination of Eckmann; and (5) error in jury instructions. We will deal only with Eckmann's third contention and we find reversible error due to the absence of a proper limiting instruction under Rule 105.

In order to provide a background for the evidentiary question presented in this case, it is necessary to describe in some detail the surrounding circumstances.

* The Honorable Richard E. Robinson, Senior United States District Judge for the District of Nebraska, sitting by designation.

Eckmann was indicted on one substantive count of violating 18 U.S.C. § 2315. The indictment also charged six other persons, one of whom like Eckmann was charged with only one count of receiving stolen goods in violation of 18 U.S.C. § 2315. The remaining five persons were charged with conspiracy to transport stolen merchandise in interstate commerce in violation of 18 U.S.C. § 2314 and were also charged in various substantive counts with violations of 18 U.S.C. §§ 2313, 2314, 2315, and 2.

Eckmann was tried with three codefendants. These codefendants included the other person charged on only the substantive count of receiving stolen property [1] and two persons, Orrin Scott Reed and Albert J. Bibby, who were charged in both the conspiracy count and in substantive counts. The three other persons indicted in the conspiracy count, Dale Linn Johnson, Jake Mathis and James Ray Thompson, were either tried separately or had pled guilty to various counts.[2]

The evidence introduced at the Eckmann trial established that a number of pieces of machinery which had been stolen in Indiana were transported to the Minot, North Dakota, area. Those involved in the transportation of the machinery were Thompson, Reed, Bibby and Johnson. After the machinery was transported to the Minot area there were attempts made to sell the machinery. The government introduced evidence during its case in chief regarding five different attempts to sell various pieces of machinery.

The first potential buyer approached was Danny Schatz. He testified that Johnson had offered to sell him a John Deere Wheel Loader, Model 644B. The second potential buyer approached was George Vitko and he was offered both the John Deere Wheel Loader and a JI Case Uniloader, Model 1830 by both Johnson and Thompson. Thereafter, these machines were transferred to Jake Mathis. The third potential buyer, Ronald Mattson, was offered the John Deere Wheel Loader, Model 644B by Mathis. The next potential buyer who testified, Edwin Klein, was approached by Mathis and was offered two JI Case Agricultural Tractors, Models 2670 and 2090. The final attempt to sell a piece of machinery was to Ronald LaCount. LaCount testified that Mathis offered to sell him a JI Case Dozer, Model 450. LaCount provided his attorney with the dozer's serial number and a check of the serial number "broke" the case.

Jake Mathis sold Eckmann a John Deere Wheel Loader, Model 644B and two JI Case Agricultural Tractors, Models 2670 and 2090 for $70,000 cash.

At trial, Eckmann's attorneys argued that evidence as to other attempts to sell machinery and the reasons the potential buyers did not purchase the machinery were not admissible against Eckmann. Eckmann's counsel argued that the evidence was either not relevant or in the alternative the evidence was inadmissible under Rule 403 of the Federal Rules of Evidence. The government argued that the evidence was admissible to show the scope of the conspiracy and was relevant as to Eckmann on the issue of Eckmann's state of mind at the time of purchase. Counsel for Eckmann argued that only his client's state of mind was relevant not the state of mind of other persons. Eckmann's counsel requested that the court give a limiting instruction under Rule 105 which would specifically tell the jury that the evidence of other attempts to sell the machinery through the testimony of the nonbuyers was inadmissible as to Eckmann.

1. The jury acquitted this codefendant.

2. Dale Linn Johnson testified extensively at Eckmann's trial. Johnson pled guilty to two substantive counts and the conspiracy count was subsequently dismissed.

Roland Edward Mathis, a/k/a Jake Mathis, was tried separately and convicted on five substantive counts. Mathis was scheduled to be tried on the conspiracy count with Bibby and Reed at the Eckmann trial, however, Mathis pled guilty to conspiracy a few days before the trial.

At the time of the Eckmann trial, James Ray Thompson had pled guilty to the conspiracy count. The plea was later withdrawn and Thompson was tried and convicted on the conspiracy count and four substantive counts.

The trial judge refused the requested limiting instruction. The trial judge specifically found that the probative value of the evidence was not outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury. However, the trial judge indicated the substance of a cautionary instruction which he would give the jury. Counsel for Eckmann argued that the cautionary instruction was insufficient because it did not specifically state that the evidence could not be used against Eckmann.

Prior to the testimony of the first nonbuyer, George Vitko, the trial judge gave the cautionary instruction. The instruction emphasized that Eckmann was not charged with conspiracy and the jury should decide which evidence was applicable to each defendant and consider the evidence separately as to each defendant.

The next nonbuyer to testify was Ronald LaCount. The trial judge gave an additional cautionary instruction prior to LaCount's testimony. This instruction emphasized that the jury must determine whether each defendant had actual knowledge that the machinery was stolen. The trial judge also told the jury that the evidence was relevant on the charge of conspiracy made against defendants Reed and Bibby and was relevant as against *all* defendants to show the general plan or scheme employed in the transactions.

Following trial, Eckmann moved for a new trial or in the alternative judgment of acquittal. Eckmann argued that the testimony of the nonbuyers allowed the jury to apply a "reasonable man" standard in determining whether Eckmann had the requisite "knowledge." The trial judge's ruling on this issue stated:

> This testimony was not allowed in to show that reasonable men would not have purchased the machinery. The evidence was submitted on the issue of conspiracy against defendants Reed and Bibby to show the perimeters of the conspiracy. The jury was so instructed at the time the evidence was received. Furthermore, the court's charge to the jury clearly indicated that an element of the offense was *actual knowledge* that the machinery was stolen. Thus, contrary to Eckmann's assertion, the jury was not told to apply a reasonable man standard, and the jury was told that the purpose of the testimony was on the issue of conspiracy.

*Rule 105*

The language of Rule 105 of the Rules of Federal Evidence clearly indicates that a properly requested limiting instruction is required when evidence inadmissible as to one party is introduced.

### Rule 105.
### LIMITED ADMISSIBILITY

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, *shall* restrict the evidence to its proper scope and instruct the jury accordingly.

(Emphasis added.)

The record in this case is clear. Eckmann's counsel requested a limiting instruction and specifically advised the trial court that the proposed cautionary instruction would not suffice. The request was aimed at limiting the evidence regarding nonbuyers to the conspiracy count and to defendants, Bibby and Reed. Counsel for Eckmann asked that the jury be instructed that the evidence regarding nonbuyers was not admissible as to Eckmann.

Since the instruction was requested to limit the evidence to "one party," rather than "one purpose," the key issue is whether the evidence was admissible as to Eckmann. The trial judge ruled that the evidence regarding nonbuyers was admissible as to Bibby and Reed "to show the perimeters of the conspiracy." We find no error in this ruling on the evidence. But, this ruling does not address the admissibility of the evidence as to Eckmann.

At trial the government argued to the trial judge that the evidence of nonbuyers was directly relevant to Eckmann's state of mind because of the similarity of those

transactions to Eckmann's purchase of the machinery. The government stated that its theory of the case was that Eckmann "was consciously avoiding the truth" and, therefore, the rejection of similar offers by other persons was relevant and not confusing, misleading or unfairly prejudicial. On appeal, the government has abandoned this argument regarding relevancy. Instead, the government notes that the questions it asked the nonbuyers were restricted[3] and the government did not argue its theory of relevancy, i. e., state of mind, to the jury but only to the judge. These arguments do not, however, address the threshold question of relevancy. Rather, they are aimed at the proper inquiries of whether (1) the admission of the evidence could instead be characterized as harmless error, or (2) whether the probative value of relevant evidence was outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury or other concerns stated in Rule 403.

■ Rule 401 of the Federal Rules of Evidence defines relevant evidence as: "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." And under Rule 402, "[e]vidence which is not relevant is not admissible." Whether Eckmann possessed the requisite "knowledge" was clearly a "fact that [was] of consequence to the determination of the action." And the trial judge has broad discretion in determining the relevancy and admissibility of evidence. *United States v. Bernhardt*, 642 F.2d 251 (8th Cir. 1981).

■ The only indication in the record as to the reasons the trial judge considered the evidence relevant as to Eckmann was that the evidence showed the general plan or scheme used in the transactions. While this evidence showed the general plan or scheme employed by the conspirators in approaching potential buyers, the evidence did not address in any manner whether Eckmann was involved in a general plan or scheme to receive stolen property. The evidence simply had no probative value as to Eckmann on such an issue.

The only other argument for relevancy was that urged by the government to the trial judge. That argument was that the evidence was relevant as to Eckmann's state of mind. It could be argued that while the jury must find that defendant himself possessed the requisite knowledge, circumstantial evidence that other persons were alerted by the unusual circumstances surrounding similar offers to sell might be partially relevant to the final determination of defendant's knowledge. This argument for relevancy might be bolstered by the fact that proof of "knowledge" in this type of case may be based on either actual knowledge or the deliberate and conscious avoidance of actual knowledge. *See United States v. Gallo*, 543 F.2d 361, 367 (D.C.Cir. 1976). The jury in this case was instructed as to these alternative methods of determining "knowledge."

Stated another way, it could be argued that there is some logical relevancy in showing other persons in similar circumstances were alerted by the unusual terms of the offer so as to make it somewhat more probable that the defendant himself was also alerted to the degree that he deliberately and consciously avoided actual knowledge.

---

**3.** The government states that the trial court restricted the use of the nonbuyers testimony. The government contends that it asked only one of the nonbuyers *why* he had not purchased the machinery. Our reading of the transcript reveals evidence quite different.

Three of the nonbuyers testified as to their reasons for not purchasing the machinery. The government questioned a fourth nonbuyer regarding terms of the sale which "concerned" him. The government did not ask a fifth non-

buyer "why" he had not purchased but instead elicited testimony as to the terms of the sale, the fact that he had not purchased the machinery and that he considered the price quoted "a good one." Counsel for the government also stated to the district court: "We don't have to ask the question. The jury knows why these people didn't buy these machines, but that certainly has a bearing on the overall question of intent * * *."

We believe, however, that the government in abandoning this argument has seen the error in such an inference.

Transactions between third persons are generally inadmissible, unless there is some relationship between them and the defendant which serves to connect him with or make him liable for their conduct. Generally, conduct of third persons is not admissible as establishing a standard to determine whether the defendant's conduct was improper.

1 Wharton's Criminal Evidence, § 163, at 299–300 (13th ed. 1972) (footnotes omitted). *See also: United States v. Bucur*, 194 F.2d 297, 305 (7th Cir. 1952).

The problem with this evidence is that it was an attempt by the government to establish such a "standard." The conduct of the nonbuyers was being used to show a standard for a "reasonable man's" conduct. But a reasonable man standard is a matter of substantive law and "the conduct of others, under the same or similar circumstances, is incompetent to establish a standard of care * * *." *Brigham Young University v. Lillywhite*, 118 F.2d 836, 840 (10th Cir.), *cert. denied*, 314 U.S. 638, 62 S.Ct. 73, 86 L.Ed. 512 (1941). Therefore, in our view, a reasonable man's conduct is not "a matter properly provable." Advisory Committee's Note, Rule 401, Federal Rules of Evidence.

We do not ignore the fact that a jury in determining whether the *defendant knew* the goods were stolen may consider, as a preliminary matter, whether a reasonable man *should* have known they were stolen based on the circumstances. *See United States v. Gallo, supra*, 543 F.2d at 367–68. But what a reasonable man would or would not have known is "a proposition of generalized knowledge" which simply is not provable through the conduct of third parties. *See* C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5165 (1978).

We note that there are some instances where the conduct of third persons may be relevant, such as, "[w]hen the existence of a particular pattern of business or activity is material." 1 Wharton's Criminal Evidence, § 163, at 300 (13th ed. 1972). In *Wesson v. United States*, 164 F.2d 50 (8th Cir. 1947), the appellant, a doctor, was charged with distribution of morphine, not in the course of his professional practice and not in good faith. In *Wesson*, this court approved the admittance of testimony by a number of other doctors as to the amount of morphine used in their practices during a similar time period. The other doctors were from the same state as appellant and "sufficiently detailed the nature of their practice and the uses they made of the drug to afford the jury a fair opportunity for comparison." *Id.* at 54. The court noted that the evidence was properly admitted in such a "technical field" to help the jury evaluate by comparison the "significance of various figures" introduced at trial. *Id.* at 54. But the court cautioned that such evidence must be "sufficiently representative and unindividualistic so that it will not be likely to mislead." *Id.* at 54.

In *Wesson*, it is clear that the government was attempting to establish a "reasonable doctor" standard for distribution of morphine to which the appellant's distribution could be compared. However, if the jury was to determine a "reasonable doctor" standard, it is apparent that there must be some showing regarding the practices of other doctors because it is an area of "specialized knowledge." *See* Fed.R. Evid. 702. In contrast, there is nothing in the record to indicate that the nonbuyers possessed some "specialized knowledge" in the purchasing of machinery or that their testimony addressed subject matter beyond "'the common knowledge of the average layman.'" 3 Weinstein's Evidence, § 702[01], at 702–5 (1978), citing, *Bridger v. Union Railway*, 355 F.2d 382 (6th Cir. 1966). Additionally, the nonbuyers' testimony did not address nor even minimally establish that there might be a pattern of business or activity which was common to Eckmann's occupation as a farmer. *See United States v. Steffen*, 641 F.2d 591, 596 (8th Cir. 1981) (custom and practice in the banking business may be relevant to intent in a misapplication of bank funds prosecution).

In sum, we hold that the testimony of the nonbuyers was not relevant because it did not address "any fact that is of consequence to the determination of the action," Fed.R. Evid. 401. Nor could the evidence be considered as making "more probable" under Rule 401 "the existence of a particular pattern of business or activity." Wharton's Criminal Evidence, *supra*, at § 163.

Having found the evidence not relevant, we deal now with the issue of whether its admission could be characterized as harmless error. *See* 10 Moore's Federal Practice § 402.04, at IV–62 (2d ed. 1976). In *United States v. Allison*, 474 F.2d 286, 289 (5th Cir. 1973), *vacated on other grounds*, 490 F.2d 79 (5th Cir.), *cert. denied*, 419 U.S. 851, 95 S.Ct. 91, 42 L.Ed.2d 82 (1974), the court stated:

> Evidence in criminal trials must be "strictly relevant to the particular offense charged." *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949). The admission of irrelevant facts that have a prejudicial tendency is fatal to a conviction, even though there was sufficient relevant evidence to sustain the verdict. *Williams v. United States*, 168 U.S. 382, 18 S.Ct. 92, 42 L.Ed. 509 (1897); *Hall v. United States*, 150 U.S. 76, 14 S.Ct. 22, 37 L.Ed. 1003 (1893).

The prejudice we find in the introduction of this evidence is twofold. First, to the extent the jury in their deliberation considered what a "reasonable man" would have known, it is very possible that they relied on the testimony of the five nonbuyers rather than their own common knowledge in setting such a standard. Second, and more importantly, this evidence improperly emphasized a "reasonable man" standard of knowledge. The amount of testimony focusing on the conduct of others rather than the conduct of the defendant cannot be ignored. A conscious avoidance theory of knowledge still requires a finding beyond a reasonable doubt that defendant himself deliberately and consciously avoided the truth. *See United States v. Joyce*, 542 F.2d 158, 161 (2d Cir. 1976), *cert. denied*, 429 U.S. 1100, 97 S.Ct. 1122, 51 L.Ed.2d 548

(1977). We cannot say with any assurance that this evidence did not mislead the jury into applying only an objective theory of knowledge rather than the proper theory of subjective knowledge. *See United States v. Kershman*, 555 F.2d 198, 200 (8th Cir.), *cert. denied*, 434 U.S. 892, 98 S.Ct. 268, 54 L.Ed.2d 178 (1977). Therefore, we hold that the district court abused its discretion in finding this evidence relevant and admissible as to Eckmann.

We acknowledge that the jury was properly instructed as to the requisite knowledge and the government did not argue a reasonable man theory to the jury. But the government's opening statement noted that others who were offered machines would testify and the evidence would show that "those people refused the sales based on their own skepticism with respect to the legitimacy of the sale." Then the government introduced the testimony of not one, but five nonbuyers.

In conclusion, we emphasize that we do not dispute the sufficiency of the evidence in regard to Eckmann's knowledge. Rather, our concern is the prejudicial effect of admitting evidence which was not relevant as to Eckmann. To the extent that a limiting instruction under Rule 105 would have eliminated such prejudice, we hold that it was reversible error to refuse such an instruction in this case. We do not address the question of whether the evidence was so prejudicial that severance of the defendants was required.

For these reasons the judgment of conviction is reversed and the case is remanded for a new trial.