17 F.3d 397
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America Plaintiff-Appellee,
v.
Carol Ann HAYS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mark Christopher MENG, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles H. MENG, Jr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marcel JORDAN, Defendant-Appellant.
 Nos. 87-5164 and 87-5166 to 87-5168.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 2, 1993.
Decided Dec. 10, 1993.
 
 1
 Before: BROWNING, BEEZER, and TROTT, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Mark Meng, Charles Meng, Marcel Jordan and Carol Ann Hays appeal their convictions and Mark Meng, Jordan and Hays appeal their sentences for mail fraud in violation of 18 U.S.C. Sec. 1341, equity skimming in violation of 12 U.S.C. Sec. 1709-2 and aiding and abetting in violation of 18 U.S.C. Sec. 2. We affirm in part and vacate and remand in part.
 
 
 4
 I. MARK MENG'S CHARLES MENG'S AND JORDAN'S CLAIMS
 
 A. Search of Suma's Offices
 1. Particularity of Warrant
 
 5
 We reject Appellants' argument that the warrant was impermissibly broad. The affidavit and attached supporting documents contained a description of the rent-collection scheme proved at trial and included 1) testimony by several sellers about Mark Meng's and Jordan's misrepresentations, 2) documentation that Suma acquired over 300 properties from 1982-1985 and that many of these properties were lost to foreclosure and 3) information on rents collected from Suma-acquired properties as early as 1982, when Suma was first incorporated. There was no indication Suma was involved in any other business activities during its three-year existence. U.S. v. Falon, 959 F.2d 1143, 1147 (1st Cir.1992) (broad warrant proper where "affidavit showed repeated episodes of fraudulent conduct and no indications of legitimate business."). There was sufficient evidence to believe Suma's business was "permeated with fraud," and a warrant authorizing the seizure of virtually all its business records was justified. Williams v. Kunze, 806 F.2d 594, 598 (9th Cir.1986).
 
 
 6
 We also reject the argument that the warrant did not sufficiently limit the discretion of executing officers by specifically describing the types of documents to be seized. Warrants similar to the one here are routinely upheld as long as they are supported by probable cause. See, e.g., U.S. v. Hernandez-Escarsega, 886 F.2d 1560, 1567 (9th Cir.1989); U.S. v. Sawyer, 799 F.2d 1494, 1508 n. 15 (11th Cir.1986); U.S. v. Brien, 617 F.2d 299, 306 (1st Cir.1980).
 
 2. Scope of Search
 
 7
 The rule recognized in U.S. v. Chen, 979 F.2d 714, 717 (9th Cir.1992), that even if a warrant is valid, all documents seized may be suppressed if the police "flagrantly disregarded" the warrant's terms, is not applicable here. The district court found most of the documents were covered by the warrant and the officers "were motivated by considerations of practicality rather than by a desire to engage in indiscriminate 'fishing.' " Chen, 979 F.2d at 717 (citations and internal quotations omitted. See also U.S. v. Tamura, 694 F.2d 591, 597 (9th Cir.1982). This finding is not clearly erroneous. Although the officers seized some items clearly outside the warrant's scope, Appellants do not suggest the police exceeded the "scope of the warrant in the places searched," Waller v. Georgia, 467 U.S. 39, 44 n. 3 (1984) (emphasis added); used the warrant as a pretext to search for evidence of unrelated crimes, U.S. v. Rettig, 589 F.2d 418, 423 (9th Cir.1978); or tried to use items outside the warrant's scope against the defendants at trial. U.S. v. Henson, 848 F.2d 1374, 1383 (6th Cir.1988). The district court properly suppressed only items not covered by the warrant.
 
 B. Search of Charles Meng's Apartment
 1. Probable Cause
 
 8
 We reject Charles Meng's argument that the warrant authorizing the search of his apartment was not supported by probable cause. The affidavit and supporting documents established Meng 1) was Suma's "Vice President of Finance" and was involved in the fraudulent scheme, 2) took Suma records home in the past and 3) shared with Mark Meng a safe deposit box containing a large amount of cash. They also established that immediately after the search of Suma's business offices, Mark Meng and an "unidentified man" were seen loading papers from the safe deposit box into a "small blue car" and that Charles Meng owned a small, blue Mercedes. Considering the "type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences" about where such evidence might be hidden under the circumstances, U.S. v. Jackson, 756 F.2d 703, 705 (9th Cir.1985), there was a fair probability that some of the documents called for by the warrant might be in Meng's apartment.
 
 
 9
 2. Omission of Material Information From the Affidavit
 
 
 10
 The district court did not err in failing to hold a Franks hearing. To obtain such a hearing, a defendant must make a substantial preliminary showing that (1) "the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading," U.S. v. Stanert, 762 F.2d 775, 781 (9th Cir.1985), and (2) "the affidavit purged of its falsities would not be sufficient to support a finding of probable cause." Id. at 780. Meng offered no evidence that the affiant omitted the additional statements in reckless disregard of whether the affidavit would be misleading. U.S. v. Crook, 936 F.2d 1012, 1014 (8th Cir.1991) ("Allegations of deliberate falsehood or reckless disregard must be accompanied by an offer of proof." (citing Franks v. Delaware, 438 U.S. 154, 171 (1978)). Although recklessness may be inferred "where the omitted information was 'clearly critical' to the probable cause determination," Rivera v. U.S., 928 F.2d 592, 604 (2d Cir.1991), the omitted statements did not justify such an inference since they did not cast doubt on Meng's propensity for storing Suma records at home. Compare Stanert, 762 F.2d at 780 (telling magistrate that suspect had been arrested for prior offense without mentioning he was never convicted indicated recklessness.).
 
 3. Scope of Search
 
 11
 The search of the storage cabinets in the parking garage assigned to Meng's apartment did not exceed the scope of the warrant. A warrant to search a residence includes areas within the occupant's exclusive control. See, e.g., U.S. v. Becker, 929 F.2d 442, 446 (9th Cir.1991); U.S. v. Elliott, 893 F.2d 220, 225 (9th Cir.1990); U.S. v. Principe, 499 F.2d 1135, 1137 (1st Cir.1974). The warrant's specific description of the living area of the apartment did not "limit the scope of the search to [that area], but instead [made] the premises to be searched more readily identifiable." U.S. v. Griffin, 827 F.2d 1108, 1115 (7th Cir.1987). We are not persuaded the warrant should be read more narrowly because the space separating the living and garage areas was open to other people.[1]
 
 C. Testimony by Former Suma Employees
 
 12
 The testimony of the three former Suma employees as to why they resigned was admissible under Rule 401. Although the testimony was irrelevant to show intent to defraud, U.S. v. Law, 979 F.2d 977, 980 (4th Cir.1992); Feazell v. Tropicana Products, Inc. 819 F.2d 1036, 1041 (11th Cir.1987); U.S. v. Eckmann, 656 F.2d 308 (8th Cir.1981), it was relevant to show the independent element of a "scheme or artifice to defraud."
 
 
 13
 Nor should the testimony have been excluded under Rule 403. If the challenged testimony had been excluded, the employees could still have testified about their experiences at Suma, the fact that they had resigned and the circumstances under which they had done so; only their opinions about Suma would have been excluded. Since the government presented independent evidence, including Appellants' own statements, demonstrating intent to defraud, the testimony was not so prejudicial that the district court abused its discretion in admitting it.[2]
 
 
 14
 D. Evidence of Failure to Return Rent Deposits
 
 
 15
 The district court did not violate Rule 404(b) by admitting evidence that Suma routinely failed to return rental deposits to its tenants. Actions that "[come] in the course of conduct with which [the defendant] was charged, and [are] probative of his consciousness that his conduct was illegal," U.S. v. Ramirez-Jiminez, 967 F.2d 1321, 1327 (9th Cir.1992), are exempt from Rule 404(b). This includes "criminal acts by a coconspirator, if committed as part of or in furtherance of the general conspiracy." U.S. v. Collins, 779 F.2d 1520, 1532 (11th Cir.1986). See also U.S. v. Lothian, 976 F.2d 1257, 1263 ("[I]f a conspiracy exists in fact [as when a scheme to defraud is shared by several], the rules of evidence are the same as where a conspiracy is charged." (citation and internal quotations omitted). The indictment charged a scheme to fraudulently obtain properties and drain them of as much economic value as possible before foreclosure. Retention of rental deposits was specifically alleged in the indictment as an act in furtherance of this scheme.
 
 
 16
 E. Jury Instructions on Intent to Defraud and Aiding and Abetting
 
 
 17
 The district court correctly instructed the jury on intent to defraud. Contrary to Appellants' assertion, under California law, giving a promissory note with no intent to honor it constitutes an "implied misrepresentation of fact, which is actionable fraud...." Manson v. Reed, 186 Cal.App.3d 1493, 1503 (1986). Since Appellants had "notice" that their conduct was illegal, their due process claim is without merit.
 
 
 18
 The district court's instruction regarding aiding and abetting was also correct. The court told the jury it could not convict unless it found the defendant "participated in the scheme" as he would in "something he wished to bring about." Although the word "willfully" was left undefined, the instruction adequately conveyed the requirement of specific intent to facilitate the commission of a crime. U.S. v. Cloud, 872 F.2d 846, 850 (9th Cir.1989); U.S. v. Avila-Macias, 577 F.2d 1384, 1390 (9th Cir.1978).
 
 F. Restitution Order
 
 19
 The district court erroneously awarded restitution of one half the value of the promissory notes given to the eight "victim sellers" who testified at trial. By basing restitution on the amount the victims contractually expected to receive from Suma, the court violated the Victim and Witness and Protection Act ("VWPA"), which limits restitution to "the amount actually lost by the victims." U.S. v. Pomazi, 851 F.2d 244, 250 (9th Cir.1988). We therefore remand to the district court for recalculation of the amount of restitution assessed.[3]
 
 G. Appellate Delay
 
 20
 The delay in this case was over five years--from May, 1987 to October, 1992. Almost three years--from October, 1987 to February, 1990--was attributable to the court reporter's failure to deliver a transcript of the February 6, 1987 hearing. Appellants asserted their right to the transcripts and to a timely appeal throughout this period. However, Appellants have not shown they were prejudiced by the delay. Prejudice can be shown in three ways: "1) oppressive incarceration pending appeal, 2) anxiety and concern of the convicted party awaiting the outcome of the appeal, and 3) impairment of the convicted person's grounds for appeal or of the viability of his defense in case of retrial." U.S. v. Antoine, 906 F.2d 1379, 1382 (9th Cir.1990). Since we affirm Appellants' convictions, their incarceration was not unreasonable, Coe v. Thurman, 922 F.2d 528, 532 (9th Cir.1990), and their chances for success on retrial were not impaired. U.S. v. Tucker, No. 87-5090, slip op 12153, 12158 (9th Cir. October 29, 1993) ("Ordinarily, where the claims asserted on appeal would not entitle the defendant to reversal, appellate delay does not result in prejudice."). Appellants have not alleged "any particular anxiety that would distinguish [their] case from that of any other prisoner awaiting the outcome of an appeal." Antoine, 906 F.2d at 1383. Finally, the delay did not impair Appellants' grounds for appeal. The district court's findings in its October, 1992 Order and the remainder of the record make clear that the officers did not flagrantly disregard the warrant.
 
 II. HAYS' CLAIMS
 A. Denial of Motion for Severance
 
 21
 The district court did not err in denying Hays' motion for severance.[4] "The general rule is that persons jointly indicted should be jointly tried." U.S. v. Williams, 989 F.2d 1061, 1071 (9th Cir.1993) (citations and internal quotations omitted). "The party seeking reversal of a decision denying severance ... has the burden of proving 'clear,' 'manifest,' or 'undue' prejudice from the joint trial. U.S. v. Van Cauwenberghe, 827 F.2d 424, 431 (9th Cir.1987).
 
 
 22
 Although Hays complains she was unduly prejudiced by the admission of certain evidence implicating her codefendants (evidence that Mark Meng and Jordan filed a fraudulent bankruptcy petition to delay foreclosure on several properties,[5] that Mark Meng and Jordan maintained six "keeper" properties under the names M & M and SKB, and statements of Mark Meng, Charles Meng and Jordan showing their intent to defraud), all of this evidence would have been admissible in a separate trial of Hays alone to show the existence of the overall scheme. Williams, 989 F.2d at 1071 (severance not required where evidence would have been admissible in separate trials).
 
 
 23
 The statements of Mark Meng, Charles Meng and Jordan were admissible against Hays even though they were made after Hays left Suma in the middle of August, 1984 because Hays failed to show she had completely withdrawn from the scheme before the statements were made. Hays continued to receive Suma commission checks through the end of that month. Moreover, she lived in the Suma-acquired property that she occupied rent-free during her employment through at least April 15, 1985--well after the codefendants' statements were made. Compare Lothian, 976 F.2d at 1263-64 (prima facie showing of withdrawal where defendant resigned from company, had nothing to do with the company's operations and received no financial benefit from the company's operations).
 
 
 24
 B. Exclusion of Testimony About Why Hays Left Suma
 
 
 25
 Since Hays did not ask the trial judge to admit Richard Lufkin's testimony as probative of her lack of intent to defraud, we review the exclusion for plain error, U.S. v. Beraun-Panez, 812 F.2d 578, 582 (9th Cir.1987),[6] and find none. Assuming the testimony was admissible under Fed.R.Evid. 803(3) to show Hays' existing mental condition, it was not reliable and its probative value was slight.[7] Moreover, Hays introduced other, more reliable evidence casting doubt on her intent to defraud.
 
 C. Admission of Summary Chart
 
 26
 The district court did not abuse its discretion under Fed.R.Evid. 1006 by admitting a summary chart showing how much Suma paid on mortgages and promissory notes that were related to the properties it acquired. Hays does not argue the chart inaccurately represented the underlying documents, but contends the chart was misleading because it did not include instances where property was deeded back to the original sellers and the money returned, or the promissory notes were re-conveyed and the contract rescinded. This objection does not implicate Rule 1006, however, and should have been raised under Rule 403. Since no Rule 403 objection was made, we review for plain error. Gomez-Norena, 908 F.2d at 500. We find none. Hays brought out on cross-examination of the witness presenting the chart that Suma deeded property back to the sellers in 16 cases and sold the property to a third person in two cases. Hays does not explain why any misleading impression left by the chart was not cured by this cross-examination.
 
 D. Prosecutorial Vouching
 
 27
 Vouching consists of either "placing the prestige of the government behind the witnesses through personal assurances of their veracity or suggesting that information not presented to the jury supports the witness' testimony." U.S. v. Molina, 934 F.2d 1440, 1445 (9th Cir.1991). None of the prosecutor's statements amounted to vouching. The phrase "we wouldn't have a case" was a concession that the jury had to find the defendants "not guilty" if it found Suma's activities legitimate. The phrase "It is impossible ... for all the government witnesses to be lying" was an argument that the jury should, as a matter of common sense, believe the government's witnesses. Molina, 934 F.2d at 1445 (No error in saying, "[Y]ou could only come to one conclusion: That somebody is lying.... Who's lying" Is Special Agent Reyes Lying? ... It's unbelievable."); U.S. v. Grey Bear, 883 F.2d 1382, 1392 (8th Cir.1989) (No error in saying "she and others who testified are, from the perspective of the government, the most believable and I will tell you why."). Finally, the phrase "I would submit that all of the witnesses ..., both for the government and the defense, are basically telling the truth" was not improper. Having just argued the jury was logically compelled to believe the government's witnesses, the prosecutor added that the jury did not have to disbelieve the defense testimony to convict because that testimony was not inconsistent with a scheme to defraud. U.S. v. Necoechea, 986 F.2d 1273, 1279 (9th Cir.1993) (No error in stating, "Why ..., if [the government's witness] is lying, isn't she doing a better job of it? I submit to you, ladies and gentlemen, that she's not lying. I submit to you she's telling the truth."); U.S. v. Stulga, 584 F.2d 142, 147 (6th Cir.1978) ("The use of the words 'I submit' are not the equivalent of expressing a personal opinion.' "). None of these statements were personal assurances that the witnesses were being truthful.
 
 E. Failure to Voir Dire Sleeping Jurors
 
 28
 The district court did not abuse its discretion in failing to voir dire the jury at the close of the trial even though Hays complained twice that jurors had been sleeping during testimony. The trial judge promptly recessed after the first complaint to allow the jury to "stretch" and rest. Hays requested no other remedy. U.S. v. Holder, 652 F.2d 449, 451 (5th Cir.1981). Moreover, Hays has shown no prejudice. U.S. v. Hendrix, 549 F.2d 1225, 1229 (9th Cir.1977); U.S. v. Tierney, 947 F.2d 854, 868 (8th Cir.1991) ("[T]he party claiming error must demonstrate that as a result of the lack of attention the juror failed to follow some important or essential part of the proceedings...."). In response to the second complaint, which was raised in general terms, U.S. v. Hernandez, 921 F.2d 1569, 1577 (11th Cir.1991) ("The more speculative or unsubstantiated the allegation of [juror] misconduct, the less the burden to investigate." (citation and internal quotations omitted)), the district court responded, "Several of them have closed their eyes but they weren't sleeping." The court's personal observation was sufficient to negate the existence of a problem. U.S. v. Edwards, 994 F.2d 417, 424 (8th Cir.1993). See also Hendrix, 549 F.2d at 1227-29.
 
 F. Judicial Bias
 
 29
 We reject Hays' claim of judicial bias. The trial judge's statements are examined "for bias and prejudice in the context in which they were made." Lang v. Callahan, 788 F.2d 1416, 1418 (9th Cir.1986). The trial judge expressed concern that Hays might be trying to manipulate his impression of her at sentencing by wearing a white dress. His choice of words, "while ill-considered, [does] not reflect [gender bias]." Id. See Callahan, 788 F.2d at 1417 ("[Y]ou are a brutal rapist and robber, of the worst kind, at least toward white females. I just wonder if you would do this to a member of your own race" did not reflect racial prejudice); U.S. v. Peltier, 529 F.Supp. 549, 551 (C.D.Cal.1982) ("I have lived and gone to school with those kind of people all my life and so I know those kind of people" did not indicate racial bias) ( cited with approval in Callahan, 788 F.2d at 1418). There is no indication the district court treated Hays adversely because of gender.
 
 
 30
 The convictions and Hays' sentence are AFFIRMED; the restitution order against Mark Meng and Jordan is VACATED and REMANDED for re-calculation of the amount.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or for the courts of this circuit except as provided by 9th Cir.R. 36-3. The parties are familiar with the facts and issues, and we will not restate them here
 
 
 [1]
 We reject Meng's argument that construing the warrant this broadly may violate the particularity requirement because "the connection between a condominium or apartment and its related storage areas is not necessarily apparent to an outsider, and this creates a danger of error." To fulfill the particularity requirement, a warrant need only "enable the executing officer to locate and identify the premises with reasonable effort." U.S. v. Turner, 770 F.2d 1508, 1510 (9th Cir.1985). The police had two independent means of identifying the location of Meng's storage area in the garage--Meng's blue mercedes (of which the police had a description) was parked there and Meng voluntarily identified the area for them. There was no danger the wrong place might be searched
 
 
 [2]
 No Rule 701 objection was made at trial, U.S. v. Gomez-Norena, 908 F.2d 497, 500 (9th Cir.1990), and the testimony was not so prejudicial that its admission was plain error
 
 
 [3]
 We need not decide whether Meng and Jordan were given "notice and an opportunity to be heard" on the question of restitution as required by the VWPA. U.S. v. Parrott, 992 F.2d 914, 917 (9th Cir.1992). We note, however, that there is some question whether Meng and Jordan were given adequate opportunity to contest the amount. The government argued throughout the sentencing process that the amount should be $770,000--the amount Suma collected in rent--on the theory that Suma deprived the sellers of rent they might have collected themselves. The district court rejected this figure without explanation
 
 
 [4]
 We reject the argument that Hays did not preserve her right to appeal the denial of her severance motion. She argued in a written pretrial motion that joinder of counts and parties was improper under Fed.R.Crim.P. 8 and severance was appropriate under Rule 14, and renewed her motion after evidence was presented at trial
 
 
 [5]
 To the extent Hays argues the bankruptcy evidence reflected a separate scheme and raises the problem of variance between the charge in the indictment and evidence presented at trial, we find no basis for reversal. The jury could have found a single scheme based on the evidence presented. U.S. v. Morse, 785 F.2d 771, 775 (9th Cir.1986) (jury could have found single scheme involving both defendants even though one defendant was involved in only two of the four transactions on which the charges were based); U.S. v. Mastelotto, 717 F.2d 1238, 1245 (9th Cir.1983) (jury could have found one scheme from evidence of discrete fraudulent transactions). Assuming it was also possible to find two separate schemes, the trial judge instructed the jury that it must find the defendants guilty of "the scheme to defraud which has been alleged in the indictment" and that their verdicts must be "unanimous." U.S. v. Wellington, 754 F.2d 1457, 1463 (9th Cir.1985). Hays never requested a more specific instruction on the possibility of multiple schemes. Fed.R.Crim.P. 30
 
 
 [6]
 Hays' renewal of her earlier motion for severance did not alert the trial judge that she wanted Lufkin's testimony admitted on her behalf
 
 
 [7]
 Evidence as to why Suma employees resigned was of limited probative value in establishing the defendants' intent to defraud, and Richard Lufkin's testimony was particularly unreliable because it was hearsay and because Hays had every incentive to appear morally upright to a member of "her" church. Moreover, the jury might have assigned excessive weight to a church representative's testimony on the legitimacy of Suma's business. The district court properly considered this risk of "misleading" the jury in making its ruling. We reject Hays' contention that the district court excluded the testimony because it disapproved of the Mormon Church