29 F.3d 635
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff, Appellee,
v.
Juan Heriberto CARRILLO, Defendant, Appellant.
 No. 93-50078.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1993.
Decided July 22, 1994.
 
 Before: FLETCHER, NORRIS, and PREGERSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Juan Heriberto Carrillo was convicted on his plea of guilty to one count of possession with intent to distribute in excess of 20 kilograms of cocaine in violation of 21 U.S.C. Sec. 841(a)(1).
 
 
 3
 When the district court denied Carrillo's pre-trial motion to suppress all evidence seized after the California Highway Patrol ("CHP") stopped his truck on the day of his arrest, Carrillo entered a conditional plea of guilty under Fed.R.Crim.P. 11(a)(2), preserving his right to appeal his conviction. The district court sentenced Carrillo to 120 months in prison, the mandatory minimum sentence under 21 U.S.C. Sec. 841(b)(1)(A)(ii)(II). Carrillo now appeals his conviction. We affirm in part and reverse in part.
 
 I. BACKGROUND
 A. Factual Background
 
 4
 In denying the motion to suppress, the district court found the following facts to be true.
 
 
 5
 On July 25, 1993, Carrillo was driving a half-ton pickup truck with Texas license plates east along Interstate 40 toward the California-Arizona border near Needles. When Carrillo's truck drove by him, CHP Officer Joseph David observed that its driver and passenger windows were tinted in a manner contrary to California law. Officer David signaled for Carrillo to stop. The officer walked to the truck's open window, told Carrillo his window tinting was illegal in California and requested his license and identification.
 
 
 6
 While standing at the open window of the truck, Officer David smelled cocaine inside the truck. Although pharmaceutical cocaine has no smell, the large amount of cocaine packed against the exterior sidewalls of the truck on a hot day gave off a bitter chemical smell of residual processing chemicals that Officer David recognized from previous cocaine seizures. He could smell the cocaine smell over the masking scent of an air freshener in the car.[1]
 
 
 7
 Officer David also noticed that Carrillo was nervous when he handed over his registration and license, that he would not make eye contact when speaking with the officer, that he had a map on his dashboard, that a screw was missing from the rear quarter panel, that Carrillo had registered the truck to himself in Texas just three days before, and that his stay in California had been very brief.
 
 
 8
 As a precaution against possible concealed weapons in the truck, Officer David asked Carrillo to leave his truck and stand on the shoulder of the highway. Keeping his weapon in his holster, and speaking without coercion in a low-key conversational tone, Officer David asked Carrillo if he had narcotics in the truck. Carrillo said no. Officer David asked Carrillo if he could search the truck and Carrillo said yes.
 
 
 9
 Carrillo then signed a bilingual English/Spanish consent-to-search form, initialling the spaces indicating he knew he could refuse consent and that he acted without coercion. Officer David then radioed for a backup unit and, based on the smell, reported that he "had a large amount" of drugs, but that the suspect did not know he had discovered it.[2] While waiting for the backup unit, Officer David told Carrillo that he knew Carrillo was carrying drugs, and that Carrillo should tell him so. Carrillo admitted that he was carrying twenty kilograms of cocaine, and nodded his head when asked if it was behind the rear quarter panel of the truck.
 
 
 10
 At that point, Officer David told Carrillo that he would be arrested. Carrillo said that he had agreed to transport the drugs for $3000. Before the backup unit arrived, Officer David opened the body panel of the truck slightly and could see packages inside. When the backup unit arrived Carrillo was formally arrested and informed of his Miranda rights.
 
 B. Procedural Background
 
 11
 On August 18, 1992, a federal grand jury indicted Carrillo for one count of possession with intent to distribute cocaine, 21 U.S.C. 841(a)(1). Carrillo pled not guilty at his arraignment on October 5, 1992. On November 17, 1993, the district court held an evidentiary hearing on Carrillo's motion to suppress all evidence seized subsequent to the stop of his vehicle.
 
 
 12
 Carrillo presented two expert witnesses at the hearing who testified that cocaine has no smell detectable by humans. One witness, Russ Whitmeyer, is a private investigator and former law enforcement officer licensed by the DEA to possess and transport cocaine for training purposes.[3] He testified that in many years of working with cocaine, in cut and uncut form and at temperatures from below freezing to 100 degrees, he had never smelled cocaine. He testified that he had never met another person who said they could smell cocaine. As a member of the California Narcotics Officers Association, he attends its yearly cocaine training conferences and has never met a person there who claims to able to smell cocaine. He admitted during questioning by the court that a cutting agent might smell, but testified that the DEA's chemist found Carrillo's cocaine to be 95% pure. Whitmeyer personally examined Carrillo's cocaine and its packaging and found no smell at all. He also admitted during cross examination that solvents used in processing cocaine might have a smell, but testified that such solvents would have dissipated completely by the time Carrillo transported the cocaine.
 
 
 13
 Carrillo's second expert was Robert Ruff, also a private investigator. Ruff spent fourteen years as Los Angeles County deputy sheriff, including an advanced course in recognizing cocaine and a temporary stint in a narcotics unit. He had never smelled cocaine.
 
 
 14
 Finally, Carrillo himself testified that early in the stop Officer David asked him several times whether he was carrying drugs in the truck. Each time, Carrillo denied that he had any drugs in the truck. However, before Carrillo signed the consent-to-search form, Officer David searched the truck and told Carrillo he knew there were drugs in the truck. After that, Carrillo admitted that he had twenty kilos of cocaine in the truck. All of these statements were made before Carrillo was advised of his Miranda rights.
 
 
 15
 Carrillo argued that Officer David lacked probable cause to prolong the investigative stop beyond the time necessary to issue a traffic citation. The government conceded that Carrillo's statement that he expected to be paid $3000 for transporting the cocaine was made after arrest and could not be admitted because Carrillo had not yet received Miranda warnings. However, the government maintained that all other statements did not result from custodial interrogation and were admissible.
 
 
 16
 The court denied the motion to suppress. With the approval of the court and the consent of the government, Carrillo changed his plea to a conditional plea of guilty under Fed.R.Crim.P. 11(a)(2), preserving the right to appeal his conviction based on a review of the denial of the motion to suppress.
 
 
 17
 Carrillo now appeals the denial of his motion to suppress, asserting: (1) Officer David lacked probable cause to stop Carrillo's truck for illegal window tinting; (2) Officer David lacked probable cause to prolong the vehicle stop to investigate for cocaine; (3) Carrillo's consent to the search of his truck had not been knowing and voluntary; and (4) Carrillo's statements leading officer David to the cocaine had been elicited in violation of Miranda v. Arizona, 384 U.S. 436 (1966).
 
 II. DISCUSSION
 A. The District Court's Findings of Fact
 
 18
 We review the district court's factual findings for clear error. United States v. Silverman, 861 F.2d 571, 586 (9th Cir.1988). We must defer to the district court's findings and depart from them only if we have a definite and firm conviction that a mistake has been committed. Anderson v. Bessemer City, 470 U.S. 564, 573 (1985). Special deference must be paid to a district court's credibility findings. United States v. Ramos, 923 F.2d 1346, 1356 (9th Cir.1991).
 
 
 19
 On appeal, Carrillo has reiterated his own version of the events of July 25, 1992 as argued at the suppression hearing. But the district court stands in the best position to judge the credibility of witnesses. We cannot firmly conclude that the court made a mistake by accepting the truthfulness of Officer David's testimony of events during the car stop. Our review must therefore rest on the chronology of events at the vehicle stop established by the district court. In particular, we affirm the district court's finding that Officer David searched the truck only after he obtained Carrillo's written consent.
 
 
 20
 We have difficulty however accepting the district court's finding that Officer David could smell the cocaine in Carrillo's truck. We have a firm conviction that a mistake has been committed. Both of Carrillo's expert witnesses, both well qualified, convincingly testified that the human nose would not detect an odor. Officer David, a percipient witness, cannot be credited as an expert witness in this context.
 
 
 21
 B. Admissibility of Evidence Seized in the Vehicle Stop
 
 
 22
 1. Did Officer David have probable cause to make his initial stop of Carrillo's vehicle?
 
 
 23
 We review de novo the district court's conclusion that an officer had a sufficient, reasonable suspicion to make a brief investigative stop ("Terry stop") based on specific, articulable facts. United States v. Fouche, 776 F.2d 1398, 1402 (9th Cir.1985), cert. denied 486 U.S. 1017 (1988). We review the findings of fact underlying that conclusion for clear error. Id.
 
 
 24
 An officer may make a Terry stop on the basis of a reasonable suspicion founded in specific, articulable facts. United States v. Sharpe, 470 U.S. 675, 689 (1984); see, generally, Terry v. Ohio, 392 U.S. 1 (1968). The California Vehicle Code prohibits tinting of the driver and front passenger window of a vehicle, except for drivers with special medical needs, who may have a removable sunscreen allowing at least 35% transmission of light. Cal.Veh.Code Secs. 26708(10), 26708.2 (West 1985 & Supp.1993). Officer David could see that Carrillo's windows were darkened with a non-removable tint in violation of the code, so he had sufficient cause to stop Carrillo's truck to investigate the window tinting.
 
 
 25
 2. Was Officer David justified in prolonging the stop to investigate for narcotics?
 
 
 26
 Carrillo argues that Officer David lacked probable cause to detain Carrillo any longer than necessary to cite him for the illegal window tinting. However, as noted above, an officer need not have probable cause to conduct a brief investigative stop; he need only have a reasonable suspicion grounded in specific, articulable facts. Sharpe, 470 U.S. at 689.
 
 
 27
 A Terry stop must be brief and narrow in scope. However, a lawful stop is not confined by an arbitrary time limit, but by the amount of time necessary for law enforcement officers to diligently pursue a means of investigation designed to quickly confirm or dispel their suspicions. Id. at 675.
 
 
 28
 Officer David's investigation of the window tinting placed him lawfully at the open window of Carrillo's truck asking for his license and registration. From there, the officer could observe several suspicious circumstances: the use of air freshener, Carrillo's nervous behavior, the recent change in registration, the brevity of Carrillo's stay in California, the map on the dashboard, and the missing screw. Eliminating the smell of cocaine, we could still find the remaining observations gave rise to a reasonable suspicion that Carrillo's truck contained drugs. Officer David could then properly detain Carrillo long enough to quickly confirm or dispel his suspicion.
 
 
 29
 3. Did Carrillo voluntarily consent to the search of his truck?
 
 
 30
 We determine the voluntariness of a consent to search based on all the surrounding circumstances, particularly the following factors: (1) whether the defendant was in custody; (2) whether the arresting officer(s) had their guns drawn; (3) whether Miranda warnings had been given; (4) whether the defendant was told he had a right not to consent; and (5) whether the defendant was told a search warrant would be issued in the absence of consent. United States v. Castillo, 866 F.2d 1071, 1082 (9th Cir.1988). No single factor is dispositive. Id.
 
 
 31
 The first factor, whether Carrillo was in custody, involves a mixed question of law and fact which we review de novo. United States v. Harrington 923 F.2d 1371, 1373 (9th Cir.), cert. denied, 112 S.Ct. 164 (1991). The remaining factors involve factual determinations, which we review for clear error. United States v. Kaplan, 895 F.2d 618, 622 (9th Cir.1990). Finally, we review for clear error the district court's ultimate determination that consent was voluntary. United States v. George, 987 F.2d 1428, 1431 (9th Cir.1993).
 
 
 32
 An investigative stop becomes a warrantless arrest at the point when a reasonable person in the position of the suspect would not feel free to leave after brief questioning. United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1295-96 (9th Cir.1988). At the time of the consent, Officer David had not physically restrained or frisked Carrillo, or pointed his weapon at Carrillo. Officer David did ask Carrillo to leave his truck and stand on the shoulder of the highway, elevating the degree of restraint on Carrillo's freedom of action. Nevertheless, until Officer David told Carrillo he knew about the cocaine in the truck, a reasonable person in Carrillo's position, who was merely stopped for a traffic violation, would expect to be free to leave after brief questioning and issuance of a traffic citation. That reasonable expectation would not change until Officer David said he knew about the drugs, which was after Carrillo signed the consent-to-search form. Therefore Carrillo was not in custody when the form was signed.
 
 
 33
 Other circumstances also indicate consent was voluntary. Officer David had not drawn his gun. Officer David informed Carrillo he had a right not to consent, and the officer did not tell Carrillo that he could get a search warrant.
 
 
 34
 Carrillo had not yet received Miranda warnings, but Miranda warnings are only required after a subject is in custody. In light of all the circumstances, the district court was not clearly wrong in finding Carrillo voluntarily gave his consent to search the truck.
 
 
 35
 4. Are the statements made by Carrillo to Officer David after he signed the consent-to-search form excludable because Carrillo was in "custody" at that time and the officer failed to advise him of his Miranda rights?
 
 
 36
 We review de novo the question whether police officers were required to warn a defendant of his Miranda rights. United States v. Khan, 993 F.2d 1368, 1375 (9th Cir.1993).
 
 
 37
 Before interrogating a defendant in custody, police officers are required to advise the defendant of his rights as enunciated in Miranda v. Arizona, 384 U.S. 436, 479 (1966). At a roadside traffic stop, a police officer is required to advise a person of his or her Miranda rights as soon as that person's "freedom of action is curtailed to a degree associated with formal arrest." Berkemer v. McCarty, 468 U.S. 420, 440 (1984).
 
 
 38
 Whether a person's freedom of action has been curtailed to a degree requiring advisement of Miranda rights depends on the totality of facts involved in the detention, including: (1) the language used by the officer in summoning the person interviewed; (2) the physical characteristics of the place where the interrogation occurred; (3) the degree of pressure applied to detain the individual; (4) the duration of the detention; and (5) the extent to which the person was confronted with evidence of guilt. United States v. Booth, 669 F.2d 1231, 1235 (9th Cir.1981).
 
 
 39
 a. Language Used
 
 
 40
 The language used by Officer David may have been "low key," but after the officer obtained Carrillo's written consent to search, he told Carrillo that he knew he was carrying cocaine and repeatedly asked him to admit how much cocaine he had. Officer David persisted in his "low key" questioning until he got the answer he sought. Such persistent questioning is characteristic of stationhouse interrogation. United States v. Beraun-Panez, 812 F.2d 578, 580 (9th Cir.), modified, 830 F.2d 127 (9th Cir.1987). In fact, Officer David's questioning had no purpose other than to elicit incriminatory statements. The officer already had Carrillo's consent to search the truck and was convinced that it contained a large amount of cocaine.
 
 
 41
 b. Physical Setting
 
 
 42
 A confrontation with a law enforcement officer in an isolated area also suggests an elevated degree of restraint on freedom of movement. Id. at 581-82. Carrillo had been told to leave his truck and stand on the shoulder of a desert highway while Officer David awaited the arrival of other officers who would assist in the search of the truck.
 
 
 43
 c. Degree of Pressure
 
 
 44
 As to the degree of pressure applied, Officer David, who carried a gun, had separated Carrillo from his truck and repeatedly prodded him to admit to having drugs.
 
 
 45
 d. Duration
 
 
 46
 The duration of detention may have been relatively brief, but it was long enough to inform Carrillo that he was not likely to receive a simple traffic citation and be on his way.
 
 
 47
 e. Confrontation with Evidence of Guilt
 
 
 48
 With regard to the extent to which Carrillo was confronted with evidence of guilt, the government points out that Officer David confronted Carrillo with no physical evidence of guilt. However, after Carrillo gave written consent to search the truck the officer told Carrillo that he knew he was transporting drugs in the truck. Such a statement would have the same psychological effect as confrontation by physical evidence. Moreover, after Officer David's statement, a reasonable person in Carrillo's position would know that he was not free to go.
 
 
 49
 f. Totality of the Circumstances
 
 
 50
 Based on the totality of circumstances, we conclude that when Officer David was interrogating Carrillo, after he signed the consent form, Carrillo was not free to leave.
 
 
 51
 It takes 30 seconds to give Miranda warnings. Well after Officer David concluded he would arrest Carrillo, and after Carrillo would reasonably conclude he was in custody, Officer David delayed giving Miranda warnings in order to subject Carrillo to psychological pressure to make incriminating statements. That was a blatant Miranda violation.
 
 
 52
 The district court erred when it announced that it would admit the coerced statements of guilt and found that Carrillo was not entitled to Miranda warnings until after he succumbed to Officer David's interrogation. Miranda warnings are intended to deter precisely the sort of conduct engaged in by Officer David: isolation, psychological pressure, and relentless pursuit of a confession. Miranda, 384 U.S. at 455. Any statement made by Carrillo before he received his Miranda warnings cannot be admitted to evidence and must be suppressed.
 
 
 53
 5. Does the absence of Miranda warnings lead to suppression of the physical evidence as well?
 
 
 54
 Carrillo argues that his inadmissible statements led to the discovery of the cocaine, and that the cocaine is therefore inadmissible as "fruit of the poisonous tree." Nardone v. United States, 308 U.S. 338, 341 (1939). However, Officer David had obtained a valid consent to search Carrillo's truck during the legitimate investigative stop. The cocaine is the product of a consensual search and did not derive from the coerced admissions of guilt.
 
 III. CONCLUSION
 
 55
 We affirm the district court's denial of Carrillo's motion to suppress with regard to physical evidence seized subsequent to the stop of his truck. We reverse the district court's denial of Carrillo's motion to suppress with regard to his statements to Officer David made after Carrillo signed the consent form but before he was given his Miranda warnings. Pursuant to Fed.R.Crim.P. 11(a)(2), on remand Carrillo may withdraw his plea of guilty. In any ensuing trial, the court should exclude the statements made by Carrillo to Officer David between the time the consent form was signed and the time Miranda warnings were given.
 
 
 56
 AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
 
 PREGERSON, Circuit Judge, concurring:
 
 57
 I agree with the majority on all but a single issue. In my opinion, the district court was in the best position to judge the conflicting testimony between Officer David, who claimed to be able smell the residue that accompanies cocaine packaging, and the two experts who testified that it was very unlikely he could do so. I would therefore defer to the court's factual finding that the officer did, indeed, detect an odor associated with cocaine.
 
 
 58
 Although the majority and I disagree on this issue, we do not differ on the ultimate disposition of the case. As noted by the majority, Officer David's olfactory claims are unnecessary to our determination that the officer had the requisite reasonable suspicion to prolong the Terry stop of Carrillo's car. Furthermore, Officer David's ability to smell cocaine is irrelevant to whether the district court was correct to admit the statements Carrillo gave in custody before he was informed of his Miranda rights.
 
 
 59
 I therefore concur.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Officer David, whose nickname is "Canine," testified that he has extensive experience in drug interdiction and that impurities in street cocaine he calls "esters" give it a distinctive smell. He testified that in training he instructs CHP officers that they can smell cocaine, and that he has smelled cocaine concealed among other smells, like detergent. He generally conducts drug interdiction patrols with the aid of a drug-sniffing dog, but was without his dog on the day he stopped Carrillo
 The district court accepted the government's theory that the large amount of cocaine packed against the exterior sidewalls of Carrillo's truck on a hot day gave off an odor of residual processing chemicals that Officer David could detect.
 
 
 [2]
 During cross-examination, Officer David first denied making the radio report that he "had" the drugs. Carrillo's counsel then played an audio tape of the radio communication provided by the U.S. Attorney. Officer David then admitted the statement, maintaining that he knew he had intercepted a large amount of drugs because of the smell and Carrillo's behavior. The tape was accepted into evidence but a transcript of the tape is not part of the record
 
 
 [3]
 Whitmeyer, a paid defense witness, stated that he had testified for the defense in a drug case only twice before, and only once in the last 11 years