UNITED STATES of America,
Plaintiff-Appellant,

v.

Ricardo BERAUN–PANEZ,
Defendant-Appellee.

No. 86–3047.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 5, 1986.

Decided March 13, 1987.

Warren S. Derbidge, Boise, Idaho, for plaintiff-appellant.

Jeffrey J. Hepworth, and John C. Hohnhorst, Twin Falls, Idaho, for defendant-appellee.

Before FLETCHER, FERGUSON, and REINHARDT, Circuit Judges.

FLETCHER, Circuit Judge:

Ricardo Beraun-Panez was charged with setting fire to vegetation on property owned by the United States, in violation of 18 U.S.C. § 1855. Upon Beraun-Panez's motion, the district court suppressed his statements to two law enforcement officials who failed to provide the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before questioning him. The government appeals on the ground that Beraun-Panez was not in custody during the interrogation. We affirm.

### FACTS

On September 5, 1985, Beraun-Panez was herding cattle in a remote rural area of Idaho. He was approached by Twin Falls Deputy Sheriff Webb and Bureau of Land Management Special Investigator Hughes, who were investigating a range fire.

The officers stopped their truck on a dirt road about two hundred yards from Beraun-Panez. Deputy Webb shouted for Beraun-Panez, who was on horseback on the hillside, to come over to the truck. Beraun-Panez rode down the hill, and on reaching the truck was shown Agent Hughes' badge and official identification, and was asked if he would answer a few questions.

An interrogation followed, conducted primarily by Agent Hughes, which was estimated variously to have lasted between half an hour and an hour and a half. The interrogation took place at the front of the sheriff's pickup, with the defendant, having dismounted from horseback, positioned between the Deputy and Agent Hughes.

Beraun-Panez was asked at least three times whether he started the fire. The officers demanded to know why he was lying and said they knew the truth. They told him that witnesses had placed him at the scene, even though their two witnesses had in fact stated only that they had seen a tan truck, like that Beraun-Panez used, within several miles of where the fire was started. Beraun-Panez testified that at one point, the officials resorted to a good guy/bad guy routine. Beraun-Panez initially denied involvement, but finally admitted that he had set the fire.

Before the interrogation, the officials had investigated Beraun-Panez's alien status. According to Hughes, he told the suspect that, if convicted, he could be deported but if he cooperated, Hughes would tell the United States Attorney of his cooperation. Beraun-Panez testified that he was told that if he continued to lie, he would be deported and separated from his family.

Although during the interrogation he was positioned between the two officers, Beraun-Panez was not held or handcuffed. He was not told that he was under arrest. The parties dispute whether he was told he could leave. The district court did not make an explicit finding on this point. The parties also dispute whether the defendant was asked if he needed to tend the cattle.

At one point in the interrogation Beraun-Panez's co-worker, Mike Ruffing, rode towards the pickup on horseback. Ruffing had been herding cattle in the same vicinity

as Beraun-Panez and went to look for him when he failed to arrive at a prearranged meeting point. Hughes directed Webb to intercept Ruffing. Ruffing was stopped about sixty feet from the pickup by Webb, and after a brief conversation, returned to his work.

The interrogation lasted about fifteen minutes longer before Beraun-Panez returned to work. He was arrested in December 1985.

## DISCUSSION

■ In *Miranda v. Arizona*, the Supreme Court held that statements that are the product of interrogation not preceded by appropriate warnings are inadmissible, where the accused was questioned while "in custody or otherwise deprived of his freedom of action in a significant way." *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. Whether an accused is in custody is measured by an objective standard. *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3152, 82 L.Ed.2d 317 (1984); *United States v. Crisco*, 725 F.2d 1228, 1231 (9th Cir.), *cert. denied*, 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 832 (1984). Accordingly, we must determine, based on the totality of the circumstances, whether " 'a reasonable person in such circumstances would conclude after brief questioning [that] he or she would not be free to leave.' " *United States v. Hudgens*, 798 F.2d 1234, 1236 (9th Cir.1986) (quoting *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir.1981)). Factors relevant to whether an accused is in custody include (1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual. *United States v. Wauneka*, 770 F.2d 1434, 1438 (9th Cir.1985) (citations omitted).

■ The district court's findings and its determination that Beraun-Panez was in custody are essentially factual. *Wauneka*, 770 F.2d at 1438 (citations omitted). We review them under a clearly erroneous standard. *Id.*

■ As stated in Judge Friendly's oft cited decision in *United States v. Hall*, 421 F.2d 540, 545 (2d Cir.1969), *cert. denied*, 397 U.S. 990, 90 S.Ct. 1123, 25 L.Ed.2d 398 (1970), for a suspect to be in custody "in the absence of actual arrest something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so." Although not physically bound, Beraun-Panez was subjected to psychological restraints just as binding. Accusing Beraun-Panez repeatedly of lying, confronting him with false or misleading witness statements, employing good guy/bad guy tactics, taking advantage of Beraun-Panez's insecurities about his alien status, keeping him separated from his co-worker in a remote rural location, insisting on the "truth" until he told them what they sought, the officers established a setting from which a reasonable person would believe that he or she was not free to leave. *See e.g., Wauneka*, 770 F.2d at 1439; *United States v. Lee*, 699 F.2d 466, 468 (9th Cir.1982); *United States v. Bekowies*, 432 F.2d 8, 13 (9th Cir.1970). The power of these tactics to force a person questioned to succumb to the will of the interrogators and forego his or her constitutional rights was vividly described in *Miranda*. *See* 384 U.S. at 455–58, 86 S.Ct. at 1617–19. The officers' relentlessness gave rise to a psychological coercion beyond that inherent in a typical noncustodial interrogation. *See Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977); *see also Berkemer*, 468 U.S. at 442, 104 S.Ct. at 3152 (unlike traffic stops which generally do not require *Miranda* warnings, stationhouse interrogations may be expected to continue until the detainee provides the answers sought and present an opportunity to employ devices designed to elicit confessions through trickery).

The district court found that the officers' mention of the possibility that he would be deported and separated from his family was a specific factor that restricted Beraun-Panez's freedom. Both officers testi-

fied that before the interrogation they had investigated Beraun-Panez's alien status. The exact content of the discussion, however, is disputed. Beraun-Panez testified that Hughes told him that he could be deported if he did not tell the truth. Hughes testified that he told Beraun-Panez that he could be deported if found guilty, but that if he cooperated, Hughes would tell the United States Attorney of his cooperation. Against a backdrop of continued accusations of lying and presentation of false evidence, either version suggests that a reasonable person could interpret the remarks as requiring him to confess before the officers left if he was to avoid deportation.

■ The government contends, however, that the applicable objective test precludes the district court and our court from taking into consideration Beraun-Panez's status as an alien. An objective standard avoids imposing upon police officers the often impossible burden of predicting whether the person they question, because of characteristics peculiar to him, believes himself to be restrained. *See United States v. Moreno*, 742 F.2d 532, 537 (9th Cir.1984) (Wallace, J., concurring) (citing *People v. P.*, 21 N.Y.2d 1, 9–10, 286 N.Y. S.2d 225, 232, 233 N.E.2d 255, 260 (1967)); *see also Hall*, 421 F.2d at 544. Because the officers knew that Beraun-Panez was an alien and, had in fact, taken pains to determine his status before questioning him, and may even have used the information to their own advantage, considering Beraun-Panez's status does not charge the officers, in this case, with an impossible prescience. We note further that the district court did not determine how Beraun-Panez perceived and reacted to the remarks; rather the court focused on how a reasonable person who was an alien would perceive and react to the remarks. We conclude that the court properly applied a "refined" objective standard. *See e.g., United States v. Scharf*, 608 F.2d 323, 325 (9th Cir.1978) (considering fact that suspect was questioned earlier in applying objective standard); *see also Moreno*, 742 F.2d at 537–38 (Wallace, J., concurring) (inability to speak and understand English may have

place in reasonable person standard where DEA agent could quickly ascertain this fact).

■ Although Beraun-Panez was not held or handcuffed, he was positioned between the two officers beside the hood of the truck. Beraun-Panez may have had some difficulty in understanding English. He was not told he was under arrest, but the district court appeared to believe Beraun-Panez's testimony that he also was not told he was free to leave. The officers testified that they asked Beraun-Panez whether he needed to tend his cattle. Beraun-Panez denied that they asked him and the district court did not resolve the dispute. We note that even if the officers' testimony is accurate, determining whether Beraun-Panez needed to do his work, is not equivalent to inviting him to stay or leave at his option.

The physical environment in which the questioning took place also lends weight to the conclusion that it was a custodial interrogation. Beraun-Panez was interrogated in a remote part of the Idaho range. Although the district court found that the physical environment was not inherently oppressive, as it was familiar to the defendant, its conclusion ignores the Supreme Court's statements in *Berkemer* concerning the significance of whether an interrogation is conducted publicly or privately. 468 U.S. at 438, 104 S.Ct. at 3150. In declining to extend the requirement of *Miranda* warnings to traffic stops, the Court in *Berkemer* noted that the circumstances associated with the typical traffic stop are not such that the motorist feels completely at the mercy of the police. The Court explained:

> Perhaps most importantly, the typical traffic stop is public, at least to some degree. Passersby, on foot or in other cars, witness the interaction of officer and motorist. This exposure to public view both reduces the ability of an unscrupulous policeman to use illegitimate means to elicit self-incriminating statements and diminishes the motorist's fear

that, if he does not cooperate, he will be subjected to abuse.

*Id.*

By contrast, the interrogation of Beraun-Panez took place well away from the public view, in a remote area where no passersby would likely be present. Further, when Beraun-Panez's co-worker approached on horseback, Agent Hughes told Deputy Webb to intercept him. Webb stopped the co-worker about sixty feet from the pickup, and after a brief conversation, the co-worker returned to his work. The Supreme Court in *Miranda* noted that isolating a subject from others, who might lend moral support to the person questioned and thereby prevent inculpatory statements, was a technique of psychological coercion. 384 U.S. at 449–50, 455, 86 S.Ct. at 1614–15, 1617. By sending away the co-worker the officers asserted their dominion over the interrogation site and eliminated any last vestige of a public interrogation. Thus, the questioning occurred in a police-dominated atmosphere where Beraun-Panez was effectively isolated. The physical surroundings support the conclusion that the interrogation was custodial.

 The government ascribes error to the district court's reliance on the interrogators' admission that their purpose was to elicit inculpatory statements from the defendant. In *Berkemer,* the Supreme Court held that a "policeman's *unarticulated* plan has no bearing on the question whether a suspect was 'in custody' at a particular time." 468 U.S. at 442, 104 S.Ct. at 3152 (emphasis added). The district court considered the admission when addressing whether Beraun-Panez was confronted with evidence of guilt. The comment was followed by a sentence in which the court noted a technique the officers used to elicit an incriminating statement. Although the court might have drafted its opinion with more precision, we conclude that the district court's focus was on the manifestations of the interrogators' intent, rather than on the intent itself. This does not offend *Berkemer.*

The government also contends that the district court erred in refusing to admit evidence concerning Beraun-Panez's previous contacts with law enforcement officials. The government, however, failed to preserve this issue on appeal by making an offer of proof pursuant to Fed.R.Evid. 103. Because at no time did counsel identify the content of the evidence he sought to introduce, we decline to consider the government's contention. *See United States v. Fritts,* 505 F.2d 168, 169 (9th Cir.1974), *cert. denied,* 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975).

## CONCLUSION

Based upon our consideration of the totality of the circumstances, we conclude that the district court's determination that Beraun-Panez was in custody when he was interrogated was not clearly erroneous.

We AFFIRM.