UNITED STATES of America,

v.

Charles DISTEFANO, Defendant.

No. 00 Cr. 91(RWS).

United States District Court,
S.D. New York.

Feb. 5, 2001.

ling the government to provide discovery or directing a hearing regarding this claim, suppressing his testimony before the Securities and Exchange Commission ("SEC"), and severing his trial from the trial of his co-defendants pursuant to Federal Rule of Criminal Procedure 14.[1] Defendant John Massaro ("Massaro") has joined in these motions to the extent applicable. The government opposes the motions.

For the reasons set forth below, the motions are denied in part and granted in part.

## Prior Proceedings

On February 9, 2000, the indictment in this case issued charging DiStefano and twenty other securities brokers with one count of conspiracy to commit securities, mail, and wire fraud, and five counts of securities fraud.

DiStefano was arraigned on February 17, 2000. The instant motion was filed on December 7, 2000, opposition was received, and the matter was marked fully submitted on January 10, 2001.

## Facts

According to the indictment, DiStefano and his co-defendants were formerly employed as registered representatives at Sterling Foster & Co. ("Sterling Foster"), a now-defunct broker dealer which formerly had its offices in Melville, New York. Five of the defendants, including DiStefano, were also employed for approximately three months in 1995 at VTR Capital ("VTR"), a broker-dealer with offices in New York, Colorado, Florida, Georgia, and Pennsylvania.

DiStefano was a registered representative and a supervisor at Sterling Foster. He and his co-defendants are charged with fraud in connection with the sale of securi-

Mary Jo White, United States Attorney for the Southern District of New York, Steven G. Kobre, Mei Lin Kwan–Gett, Assistant U.S. Attorneys, of counsel, New York City, for United States of America.

Golub & Golub, New York City, Mitchell A. Golub, of counsel, for Charles DiStefano.

## OPINION

SWEET, District Judge.

Defendant Charles DiStefano ("DiStefano") seeks an order dismissing the indictment on the grounds of selective prosecution or, in the alternative, compel-

---

**1.** DiStefano also seeks permission to join in motions filed by other defendants in this case, and to file further motions pursuant to any discovery provided in response to the instant motions. As to the first matter, DiStefano does not need advance permission to make or join in motions and will be deemed to have joined in motions by his co-defendants to the extent applicable. As to the second matter, again, advance permission is not required so long as any further motions are in accordance with the governing rules of procedure and orders of this Court.

ties to public customers relating to six public offerings and/or aftermarket trading in the securities of six corporations (the "House Stocks"). Allegedly, as a result of various fraudulent sales practices of DiStefano and his co-defendants, Sterling Foster drove the price of the House Stocks in the immediate aftermarket from the offering price to at least twice that amount. Shortly thereafter, the value of the House Stocks experienced a sharp decline. Sterling Foster's clients were prevented from selling those stocks and, consequently, incurred millions of dollars in losses. The fraudulent conduct is alleged to have occurred between 1994 and 1997.

In connection with the conspiracy count, the indictment alleges *inter alia* that the brokers often assisted each other in defrauding customers, gave lectures to fellow brokers concerning sales practice techniques, influenced other brokers to prevent sales of stocks, and, as supervisors, encouraged, contributed, or participated in brokers' improper conduct.

DiStefano and his co-defendants are twenty-one of approximately four hundred brokers formerly employed at Sterling Foster.

DiStefano testified before the SEC on December 17, 1999, pursuant to an SEC investigation. According to an affidavit submitted by DiStefano, his initial contact with the SEC was through a telephone conversation with Elizabeth Goot ("Goot"), an attorney for the SEC, on some unspecified date prior to December 17, 1999. Goot told him that she wanted to speak with him as part of an investigation by the SEC of "Lasergate."[2] DiStefano asked if he needed an attorney and was told he could have counsel if he wished, at which point DiStefano stated to Goot that he could not afford an attorney and asked if the SEC would appoint one for him. Goot told him he was not entitled to appointed counsel for such a proceeding. DiStefano stated that he wanted to delay his appearance before the SEC until such time as he could afford an attorney, but Goot stated that a subpoena had been issued for his appearance and that, if he did not show up, the federal marshals would be sent to get him. DiStefano subsequently appeared for his deposition.

A transcript of the deposition has been provided to the Court, revealing the following pertinent facts. DiStefano's deposition took place in the offices of the SEC located in 7 World Trade Center, an office building. The deposition commenced at 9:35am and concluded at 6:11pm, with several breaks during the day. At the beginning of the deposition, Goot informed DiStefano that his testimony was part of an investigation by the SEC which included "the sales practices of Sterling Foster, and also the sales practices during the time that [DiStefano was] employed at Sterling Foster." Goot further informed DiStefano that the purpose of the investigation was to determine if there had been any violations of the law, including the criminal laws, and that the information could be provided to criminal authorities. Goot provided DiStefano with SEC Form 1662, which states that information given could be used against him in a criminal proceeding, and that he had the right to refuse to provide information pursuant to the Fifth Amendment.

Also at the outset of the proceeding, Goot advised DiStefano of his right to be "accompanied, represented, or advised by counsel," and that the proceedings would be adjourned if he wanted to consult with an attorney. DiStefano responded that he understood his right. Goot reviewed SEC Form 1662 with DiStefano and noted that one of the provisions of that form states that the proceedings will be adjourned if the individual being questioned decides to consult counsel. Goot further explained to DiStefano that he had Fifth Amendment rights and could refuse to answer any questions that might tend to incriminate him.

**2.** Lasergate was one of the House Stocks.

Shortly after the deposition commenced, Goot asked DiStefano for his cell phone number, and DiStefano refused to provide it. Goot persisted, and DiStefano responded, "I'll cease this right now and walk out of here if this goes on one second more." Ultimately, DiStefano did not provide the number, and did not leave. Later in the morning, DiStefano provided him with copies of certain regulations, pursuant to DiStefano's request, at which point Goot asked him if he wanted to adjourn the proceedings in order to consult with counsel. DiStefano responded, "I can proceed at this point." Goot again asked him if he wanted to take time out to consult with counsel and to adjourn the proceeding, as she could not explain the law to him or provide him with legal advice. DiStefano responded, "I may decide to do that regarding some of the rules that I just reviewed ... but at this point, no, I don't need to consult at this point."

### Discussion

**I. The Motion to Dismiss for Selective Prosecution or for Discovery Regarding this Claim is Denied**

**A. The Governing Legal Standards**

■ The Department of Justice exercises " 'broad discretion' to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (*quoting Wayte v. United States*, 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985)). Its prosecutorial decisions are therefore afforded a "presumption of regularity." *Armstrong*, 517 U.S. at 464, 116 S.Ct. 1480 (*quoting United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926)). "[I]n the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *Armstrong*, 517 U.S. at 464, 116 S.Ct. 1480. "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury,

generally rests in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

■ DiStefano's selective prosecution defense is an "assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Armstrong*, 517 U.S. at 463, 116 S.Ct. 1480. Accordingly, while prosecutorial decisions are not completely shielded from judicial review, courts are "properly hesitant" to engage in this inquiry because of the deference given to prosecutors' decisions, and so as not to unnecessarily impair prosecutors' law enforcement functions. *Id.* at 464–65, 116 S.Ct. 1480; *Wayte*, 470 U.S. at 607, 105 S.Ct. 1524. Thus, the legal standard for proving a claim of selective prosecution is "a demanding one," *Armstrong*, 517 U.S. at 463, 116 S.Ct. 1480, requiring the defendant to adduce "clear evidence" to rebut the presumption that the prosecutor has not violated equal protection, *id.* at 464, 116 S.Ct. 1480.

■ To establish a *prima facie* case of selective prosecution, DiStefano must establish: "(1) that, while others similarly situated have not generally been proceeded against because of conduct of the types forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, *i.e.*, based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *United States v. Fares*, 978 F.2d 52, 59 (2d Cir.1992) (internal quotation marks and citation omitted).

■ Finally, in order to obtain discovery on a claim of selective prosecution, a defendant must provide " 'some evidence tending to show the existence of the essential elements of the defense.' " *Armstrong*, 517 U.S. at 468, 116 S.Ct. 1480 (*quoting United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir.1974)). This stan-

dard is a "rigorous" one. *Armstrong,* 517 U.S. at 468, 116 S.Ct. 1480. "Mere assertions and generalized proffers on information and belief are insufficient." *Fares,* 978 F.2d at 59 (*citing Berrios,* 501 F.2d at 1211).

### B. *DiStefano has not Met His Burden Either for Dismissal or Discovery*

■ DiStefano claims that he was singled out for prosecution because the government brought charges against only him and his twenty co-defendants, and did not bring charges against the other hundreds of registered brokers formerly employed at Sterling Foster. "On information and belief," DiStefano maintains that his uncharged coworkers engaged in the same conduct for which he is being prosecuted.

■ As an initial matter, claims based on "information and belief" are insufficient to meet a defendant's burden on a selective prosecution motion. *See Fares,* 978 F.2d at 59. DiStefano fails to proffer any evidence that he was singled out. For example, although he hypothesizes that evidence against his uncharged co-workers was "easily ascertainable and most certainly unavoidable," he offers no evidence regarding the quality or quantity of such evidence.

In addition, DiStefano fails to offer any evidence that the decision to prosecute him was based upon some impermissible consideration such as race, religion, or other arbitrary classification. *See Wayte,* 470 U.S. at 608, 105 S.Ct. 1524. Indeed, DiStefano does not even offer a hypothesis in this regard. Instead, he avers that the government's motion is "unclear." Thus, DiStefano has failed to meet his burden for dismissal of the indictment.

■ DiStefano also fails to meet his burden to obtain discovery, which is to offer "some evidence tending to show the essential elements" of a selective prosecution defense. His assertion that he does not know the government's motivations for prosecuting him misunderstands his re-

quirements under the law. Absent some show of proof, the government is not required to explain the basis for its decision to prosecute in this case. Therefore, neither discovery nor a hearing regarding this matter is warranted.

### II. *The Motion to Suppress DiStefano's Testimony Before the SEC*

DiStefano contends that his testimony before the SEC should be suppressed because he was interrogated while in custody without having been given *Miranda* warnings, pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). DiStefano further contends that any waiver of his right to counsel under *Miranda* was not knowing, intelligent, and voluntary.

■ It is well-settled that *Miranda* warnings are not required unless law enforcement agents interrogate a person who is in custody. *See Miranda,* 384 U.S. at 444, 86 S.Ct. 1602; *United States v. Mitchell,* 966 F.2d 92, 98 (2d Cir.1992). "The test used in determining whether a defendant was in custody is an objective one." *United States v. Kirsh,* 54 F.3d 1062, 1067 (2d Cir.1995). The question is "whether a reasonable person would have understood herself to be 'subjected to restraints comparable to those associated with a formal arrest.'" *Id.* (internal quotation marks and citation omitted). This inquiry "focuses upon the presence or absence of affirmative indications that the defendant was not free to leave." *Id.* (internal quotation marks and citation omitted). An accused is in custody when, even "in the absence of an actual arrest, law enforcement officials act or speak in a manner that conveys the message that they would not permit the accused to leave." *Campaneria v. Reid,* 891 F.2d 1014, 1021 n. 1 (2d Cir.1989).

■ An assessment of whether a particular setting was "custodial" requires consideration of "all the circumstances surrounding the interrogation," including (1)

whether a suspect is or is not told he is free to leave, (2) the location and atmosphere of the interrogation, (3) the language and tone used by the police, (4) whether the suspect was frisked or patted down, and (5) the length of the interrogation. *Tankleff v. Senkowski*, 135 F.3d 235, 244 (2d Cir.1998) (citations omitted).

 DiStefano, in contending that he was in custody during his SEC deposition, relies primarily on his allegation that Goot, the SEC attorney, threatened to have him arrested if he did not show up in compliance with the subpoena.

The deposition took place in the offices of the SEC, an office building not frequented by police officers or government agents. The deposition lasted approximately nine hours, with several breaks. DiStefano was advised of his right to have counsel, and was reminded several times during the day that he could postpone the deposition if he wanted to consult with an attorney. Goot also explained to DiStefano that he had Fifth Amendment rights and could refuse to answer any question which might tend to incriminate him. DiStefano himself communicated his understanding that he was free to leave, when he refused to reveal his cell phone number and stated, "I'll cease this right now and walk out of here if this [asking for his cell phone number] goes on one second more." After providing DiStefano with certain regulations he requested, Goot reminded him that she could not advise him as to the law, and asked him if he wanted to adjourn the proceeding to consult with counsel, to which DiStefano responded, "I can proceed at this point." Asked again if he wanted to adjourn to consult counsel, he stated that he might decide to consult with counsel at a later point but "I don't need to ... at this moment." Thus, DiStefano was given multiple opportunities

to terminate the deposition but chose not to do so.

Thus, even if Goot did previously threaten DiStefano with arrest if he failed to show up for the deposition, the setting and course of events on the day of the deposition reveals that a reasonable person would have felt free to leave. These circumstances do not rise to the level of coerciveness required to show that DiStefano was in custody. These circumstances also fall short of those present in *United States v. Beraun–Panez*, 812 F.2d 578 (9th Cir.1987), cited by DiStefano. *See id.* at 579–83 (defendant in custody where police officers approached him in remote rural area, demanded he tell the truth, threatened him with deportation, and prevented a co-worker from talking with him). Therefore, DiStefano was not entitled to *Miranda* warnings.

 DiStefano also contends that his waiver of his right to counsel was not knowing and intelligent because he did not understand "the gravity of the situation," *i.e.*, his possible criminal exposure.[3] However, Goot informed him that his testimony was part of an investigation by the SEC concerning the sales practices at Sterling Foster, that the purpose was to determine whether there had been any violations of law, including criminal laws, and that any information he gave could be provided to criminal authorities. The SEC also provided DiStefano with SEC Form 1662, which warned him that any information he gave could be used against him in a criminal proceeding, and that he had the right to refuse to provide information pursuant to the Fifth Amendment. Finally, the Second Circuit has noted that "in the case of a Securities Exchange Commission investigation the broker-dealer must be aware that the discovery of evidence of criminali-

---

**3.** As this was not a custodial interrogation, the right to counsel was as provided by administrative law and due process, rather than *Miranda*. *See* Administrative Procedure Act § 6(a), 5 U.S.C. § 555(b) ("Any person compelled to appear in person before any agency or representative thereof shall be accorded the right to be accompanied, represented, and advised by counsel, or if permitted by the agency, by other qualified representative."); *Sartain v. SEC*, 601 F.2d 1366, 1375 (9th Cir.1979).

ty could lead to prosecution." *United States v. Light*, 398 F.2d 908, 914 (2d Cir.1968). Therefore, DiStefano's claim that his waiver was not knowing and intelligent fails.

■■■■■ Finally, DiStefano contends that his waiver of his right to counsel was involuntary. A statement is "involuntary" within the meaning of the Fifth Amendment if it is obtained by " 'techniques and methods offensive to due process' ... or under circumstances in which the suspect clearly had no opportunity to exercise 'a free and unconstrained will.' " *Oregon v. Elstad*, 470 U.S. 298, 304, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) (*quoting Haynes v. Washington*, 373 U.S. 503, 515, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963)). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.' " *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). DiStefano has made no such showing here.

### III. *The Motion for Severance*

■■■ DiStefano seeks to sever his trial from that of his co-defendants on the ground that there will be "prejudicial spillover" from evidence introduced against his co-defendants. DiStefano contends that prejudice will occur because there is a lack of evidence of a conspiracy, and because the evidence against his co-defendants is greater than the evidence against him.

■■■■■ Federal Rule of Criminal Procedure 14 provides in pertinent part:

> If it appears that a defendant ... is prejudiced by a joinder of offenses or of defendants in an indictment ..., the court may order ... separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Fed.R.Crim.P. 14. The disposition of a motion for severance under Rule 14 is entrusted to the sound discretion of the trial court. *See United States v. Nersesian*, 824 F.2d 1294, 1303 (2d Cir.1987).

Moreover, "[a]ny analysis of ... requests for severance must begin from the position, repeatedly expressed in the decisions of our Court of Appeals, that defendants who are indicted together will normally be tried together." *United States v. Ianniello*, 621 F.Supp. 1455, 1477 (S.D.N.Y.1985). The preference for trying co-defendants together is particularly strong "where, as here, the defendants are alleged to have participated in a common plan or scheme." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir.1998); *see* Fed.R.Crim.P. 8(b).

■■■■ "[A] severance ... should only be granted if there is a serious risk that a joint trial would either compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir.1998) (citation omitted). A defendant must do more than show he may have a better chance for acquittal at a separate trial. *Zafiro v. United States*, 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).

■■■■ Assuming *arguendo* that there is comparatively little evidence against DiStefano, "differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." *United States v. Scarpa*, 913 F.2d 993, 1015 (2d Cir.1990) (internal quotation marks and citation omitted). In addition, the risk of any prejudice diminishes where evidence against co-conspirators would also be admissible in separate trials against the defendant seeking severance to prove the existence of the charged conspiracy. *See United States v. Diaz*, 176 F.3d 52, 103 (2d Cir.1999) (citations omitted).

Among other things, the indictment charges the defendants with participating in a single conspiracy to commit securities fraud. All twenty-one defendants were charged in the same six counts. In support of the conspiracy charge the indictment alleges that the brokers often assist-

ed each other in defrauding customers, gave lectures to fellow brokers concerning sales practice techniques, influenced other brokers to prevent sales of stocks, and, as supervisors, encouraged, contributed, or participated in brokers' improper conduct. Thus, evidence against DiStefano's co-defendants that is relevant to establishing the existence of a conspiracy would be admissible in a separate trial against him, and DiStefano's contention that much of the evidence in a joint trial would have nothing to do with him is misplaced.

Therefore, DiStefano has failed to meet his burden to obtain a severance of trial. Moreover, to the extent that there is any risk of prejudice at trial, a less drastic measure such as a limiting instruction will suffice. *See Zafiro,* 506 U.S. at 539, 113 S.Ct. 933.

### IV. *The Rule 404(b) Motion*

 DiStefano also moves for disclosure at least two weeks before trial of all other crimes, wrongs, or acts that the government intends to introduce at trial, pursuant to Federal Rule of Evidence 404(b). Rule 404(b) requires that the government provide "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." Fed.R.Evid. 404(b).

This Court has previously approved Rule 404(b) disclosure two weeks before trial as reasonable. *See U.S. v. Jailall,* 00 Cr. 69, 2000 WL 1368055, at*6 (S.D.N.Y. Sept. 20, 2000); *United States v. Kelly,* 91 F.Supp.2d 580, 584 (S.D.N.Y.2000). The government objects that such an order is unnecessary, and represents that it will provide such notice "well in advance of trial," but without specifying a time frame. The government also notes that notice afforded more than ten working days before trial has consistently been deemed by courts in this circuit as "reasonable" within the meaning of Rule 404(b). *See, e.g.,*

*United States v. Richardson,* 837 F.Supp. 570, 575 (S.D.N.Y.1993).

DiStefano's motion is granted insofar as the government is directed to give notice of its Rule 404(b) evidence at least ten working days before trial. The government may provide notice during trial in the event new 404(b) arises and this Court excuses pretrial notice for good cause shown.

### *Conclusion*

Therefore, for the reasons set forth above, the motions are denied in part and granted in part. This order pertains to both DiStefano and, to the extent applicable, Massaro.

It is so ordered.