UNITED STATES of America,
Plaintiff–Appellee,

v.

Barbara'Kae HAYDEN, Defendant–
Appellant.

No. 00–50555.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 12, 2001

Filed Aug. 10, 2001

Benjamin L. Coleman, Federal Public Defenders of San Diego, San Diego, California, for the appellant.

Richard Cheng, Assistant United States Attorney, Office of the U.S. Attorney, San Diego, California, for the appellee.

Before: RYMER and RAWLINSON, Circuit Judges, and RESTANI, Judge.*

RESTANI, Judge:

Barbara'Kae Hayden ("Hayden") appeals from a conviction for four counts of theft of personal property from her employer on a U.S. naval base in violation of 18 U.S.C. § 661 (1994), covering theft within the special maritime and territorial jurisdiction of the United States under Chapter 31 ("Embezzlement and Theft") of Title 18.[1] Among other matters, Hayden argues that section 661 does not cover crimes in the nature of embezzlement. We affirm.

## Background

Hayden was employed as the bookkeeper for a McDonald's restaurant located on the United States Naval Submarine Base in San Diego, California. She was responsible for counting the money that the restaurant received during the day and depositing that money at the Peninsula Bank of San Diego, located off the naval base.

In 1998, the owner of the McDonald's restaurant, Frank Bassett ("Bassett"), discovered that Hayden was late in depositing the restaurant's cash receipts. Bassett suspected Hayden and took away her responsibility for making deposits. In sum, four deposits from March 11–16, totaling $10,573.96, were never received at the bank. Bassett later notified the Federal Bureau of Investigation ("FBI") and provided them with a list of all bank deposits handled by Hayden during the six months prior to March 16. The list demonstrated that most of the deposits were made a number of days and sometimes as much as a week after the money should have been deposited in the bank and not within the deposit bag for the correct date.

An FBI agent, John Iannarelli ("Iannarelli"), interviewed Hayden on two separate occasions. Hayden provided her own transportation to both meetings. The first meeting took place on April 13, 1999, in one of the interview rooms at the FBI's San Diego office. At the outset, Hayden was told that she need not answer any questions and was free to leave at any time. Hayden did not indicate that she had any concerns or problems understanding the questions posed. She was not advised of her rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and she was neither placed under arrest nor restrained during the 20–minute interview.

---

* Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

1. Section 661 provides in relevant part: "Whoever, within the special maritime and territorial jurisdiction of the United States, takes and carries away, with intent to steal or purloin, any personal property of another shall be punished...." 18 U.S.C. § 661.

Agent Iannerelli conducted the second interview on May 13, 1999, again in one of the interview rooms at the FBI's San Diego office. A Naval Criminal Investigative Service ("NCIS") agent was present as well. At the outset, Iannarelli explained to Hayden that she was not under arrest and that she was free to leave at any time.[2] Hayden responded that she understood. Hayden testified that later in the meeting Iannarelli told her that if she walked out of the door she would be arrested and sent to federal prison, possibly out of state. Iannarelli testified that no one in the room discussed federal prison or threatened her with the potential of federal prison.

At this second interview, Iannarelli presented Hayden with bank statements reflecting the cash deposits at the bank of the McDonald's revenues as well as copies of the bank deposit bags that the cash was placed into when sent to the bank. Hayden, when confronted with the cash deposit records, confessed to the investigators that she had not made the March 11–16, 1998, deposits and instead kept the money for herself. Hayden returned to her home after the meeting.[3] At no time during the interview did Iannarelli advise Hayden of her *Miranda* rights.

On February 28, 2000, the district court denied Hayden's motion to suppress her confession based on a determination that her account of the events lacked credibility because it "doesn't make sense and it doesn't ring true to this court." At the close of the government's case on May 24, 2000, Hayden moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29. The district court denied the Rule 29 motion and found Hayden guilty on all four counts. On September 20, 2000, the court

imposed a sentence of two months of house detention and five years of supervised release on each count of conviction, to run concurrently. The district court also imposed restitution in the amount of $10,573.96 and a $400.00 special assessment. Hayden timely appealed the order on September 21, 2000.

## Jurisdiction and Standard of Review

■ The district court had jurisdiction pursuant to 18 U.S.C. § 3231, and appellate jurisdiction is pursuant to 28 U.S.C. § 1291. This court reviews the district court's denial of a motion for a judgment of acquittal *de novo*. *United States v. Pacheco–Medina,* 212 F.3d 1162, 1163 (9th Cir.2000).

## Discussion

Hayden makes the following arguments in support of her appeal: (1) her actions constitute "embezzlement," which section 661 does not cover; (2) even if section 661 does cover embezzlement, the offenses occurred off the naval base and therefore outside federal jurisdiction; and (3) her statements at the offices of the FBI should have been suppressed pursuant to *Miranda*. Hayden's arguments lack merit.

### 1. Applicability of 18 U.S.C. § 661.

The Ninth Circuit has not had occasion to determine whether embezzlement falls within the purview of 18 U.S.C. § 661. The Third Circuit in *United States v. Schneider,* 14 F.3d 876, 881 (3d Cir.1994), however, has held specifically that section 661 does encompass embezzlement. The defendant in *Schneider* had been convicted of stealing money from a U.S. Army-base

---

**2.** Iannarelli testified that he specifically stated, "I don't care if you tell me you are responsible for the Lindbergh kidnaping, you are going to walk out of here today and not be arrested."

**3.** No evidence was introduced as to the length of this second meeting.

labor union by writing checks payable to herself as reimbursements for undocumented expenses she allegedly incurred on behalf of the union. Looking to the plain meaning of the statute, the court concluded that "one who embezzles is also one who 'takes and carries away.'" *Id.* at 880. The *Schneider* court reasoned that the word "steal" is of the broadest generic nature, and therefore covers all forms of wrongful handling of property, including embezzlement. *See id.* The court further reasoned that the narrow interpretation suggested by the appellant would yield an anomalous result because

> Section 662 of the statute specifically describes the criminal conduct proscribed therein as including receipt of property that has been 'feloniously taken, stolen, or embezzled.' In appellant's view, one who embezzles funds would not be chargeable under § 661, but the receiver of such embezzled funds could be charged for the offense defined in § 662.

*Id.* The court also relied on *United States v. Henry*, 447 F.2d 283, 286 (3d Cir.1971), where the Third Circuit had found that the terms "steal or purloin" meant any taking where a person, without permission and "by some wrongful act, willfully obtains or retains possession of property belonging to another." Lastly, the *Schneider* court also noted our decision in *United States v. Maloney*, 607 F.2d 222, 231 (9th Cir.1979), *cert. denied*, 445 U.S. 918, 100 S.Ct. 1280, 63 L.Ed.2d 603 (1980), where we stated that "[t]he implication from the [wording of the] titles and placement of § 661 in Chapter 31 of Title 18 is that the statute was not enacted with the definitional refinements of the particular crime of larce-

ny in mind, but rather with an intent to broaden the offense."

■ Hayden suggests that we reject *Schneider* based on *Bell v. United States*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983), and cites *Bell* for the proposition that the term "take and carry away" indicates an intent to limit the scope of theft offenses covered. The *Bell* holding does not support this characterization. The issue before the *Bell* Court was whether the language of 18 U.S.C. § 2113(b) ("takes and carries away, with intent to steal ..."), enacted under the Federal Bank Robbery Act, encompassed the charged crime of "obtaining money from a bank under false pretenses," or rather, was limited to larceny.[4] The Court first observed that "larceny" and statutory theft crimes (such as false pretenses and embezzlement) existed as separate crimes, but only because late–18th century courts were reluctant to expand the definition of "theft" beyond common law larceny. *Id.* at 359, 103 S.Ct. 2398. The *Bell* Court held that the Act did encompass "false pretenses" because although the 1934 Congress had intended that "larceny" cover theft only by forcible means, the 1937 Congress amended the Act by adding the "take and carry away" language specifically to cover theft by either forcible or nonforcible means. *Id.* at 361–62, 103 S.Ct. 2398. The Court cautioned, however, that its holding was limited to the crime of "false pretenses," by stating that the Act "may not cover the full range of theft offenses." *Id.* Thus, *Bell* does not, as Hayden asserts, stand for the proposition that embezzlement necessarily falls outside the purview of § 661. If anything, the *Bell* holding suggests that embezzlement is

---

4. The language of the Federal Bank Robbery Act, 18 U.S.C. § 2113(b), parallels in large part the language in 18 U.S.C. § 661. Section 2113(b) imposes criminal sanctions on "[w]hoever *takes and carries away, with intent to steal or purloin,* any property or money or

any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association ...." (emphasis added).

proscribed because the legislative history of this crime is similar to that of false pretenses. We adopt the reasoning of *Schneider.*[5]

### 2. Jurisdiction under 18 U.S.C. § 661.

▮▮▮ Hayden argues that United States "special maritime and territorial jurisdiction" under 18 U.S.C. § 661 cannot lie because her criminal intent was formed where she had a "duty to account," i.e., at the off-base bank. Where a continuing offense—such as embezzlement—runs through several jurisdictions, the offense is committed and cognizable in each. *See United States v. Angotti,* 105 F.3d 539, 542–43 (9th Cir.1997). Moreover, 18 U.S.C. § 3237(a) states that "[a]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of or prosecuted in any district in which such offense was *begun, continued or completed.*" (emphasis added). Here, Hayden's offenses at least "began" and "continued" on property within specialized federal jurisdiction. The uncontroverted evidence of delayed cash deposits shows that Hayden "took" and "carried away" the money while on the naval base. Furthermore, Hayden's "intent to steal or purloin" is demonstrated by the fact that, while on base, she continually used next day receipts to cover her tracks. Thus, federal jurisdiction was proper.

### 3. Suppression of Hayden's Statements.

▮▮▮ Hayden argues that her confession should have been suppressed because she was "in custody" for *Miranda* purposes. In-custody determinations for *Miranda* purposes are reviewed *de novo. Thompson v. Keohane,* 516 U.S. 99, 111–13, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). We held in *United States v. Beraun–Panez,* 812 F.2d 578, 580 (9th Cir.), *modified* 830 F.2d 127 (9th Cir.1987), that in-custody determinations must be "based on the totality of the circumstances" and are reviewed according to whether "a reasonable person in such circumstances would conclude after brief questioning [that] he or she would not be free to leave" (citations and internal quotation marks omitted). Factors relevant to whether an accused is "in custody" include the following: (1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual. *Id.* at 580 (citation omitted).

▮▮▮ Here, the record supports the conclusion that Hayden cannot be considered to have been "in custody" for purposes of *Miranda.* Hayden appeared for the two interviews of her own volition. At the second interview, she was told explicitly that she was free to leave at anytime and would not be arrested on that occasion. There is no evidence that Hayden was incapable of finding her way out of the FBI building or that her ability to leave was in any other way restrained. Nor is there any evidence that the duration of the

---

**5.** Hayden also relies upon *United States v. Beard,* 436 F.2d 1084 (5th Cir.1971), where the Fifth Circuit held that common law embezzlement was not cognizable under § 661. However, Beard is distinguishable. Beard arose under peculiar circumstances where the government attempted to change the charge against the defendant from common law embezzlement under 18 U.S.C. § 13 to a charge under 18 U.S.C. § 661, without amending the indictment or ensuring that the defendant's actions could support a charge brought under § 661. Thus, the court never determined whether the defendant's conduct, regardless of whether it could also constitute embezzlement under another statute, was punishable under § 661.

interviews was excessive or that undue pressure was exerted on Hayden.

Accordingly, we **AFFIRM.**