**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Trevor ST. GERMAIN, Defendant–
Appellee.**

No. 03–30516.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 14, 2004.

Decided Aug. 18, 2004.

Katherine Jill Bolton, Esq., Office of the
U.S. Attorney, Yakima, WA, for Plaintiff–
Appellant.

George Wynn Colby, Esq., Adam Moore
Law Firm, Yakima, WA, for Defendant–
Appellee.

Before: B. FLETCHER, HAMILTON,* and BERZON, Circuit Judges.

MEMORANDUM **

The government appeals the district court's suppression of evidence in the federal prosecution of Trevor St. Germain, indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court concluded that St. Germain had been in custody when he made incriminating responses to a Fish and Wildlife officer's questions, and suppressed those statements because the officers had not given him *Miranda* warnings. All other evidence obtained at the scene was also suppressed as products of the constitutional violation. We disagree, reverse, and remand.

We have jurisdiction over the government's certified and timely interlocutory appeal pursuant to 18 U.S.C. § 3731. "Whether a person is 'in custody' for purposes of *Miranda* is a mixed question of law and fact warranting de novo review." *United States v. Galindo–Gallegos,* 255 F.3d 1154, *amending* 244 F.3d 728 (9th Cir.2001). The factual findings underlying the district court's custody decision are reviewed for clear error. *United States v. Kim,* 292 F.3d 969, 973 (9th Cir.2002) (*I.Kim*). "Whether an encounter between an individual and law enforcement authorities constitutes an investigatory stop is a mixed question of law and fact subject to de novo review. Factual determinations underlying this inquiry are reviewed for clear error." *United States v. Kim,* 25 F.3d 1426, 1430 (9th Cir.1994) (internal citation omitted) (*C.Kim*). As the facts are familiar to the parties, we do not include them here except as necessary to understand our disposition.

The determination of whether an individual was subjected to custodial interrogation "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California,* 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (per curiam). Factors to be considered in the custody inquiry include: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *United States v. Hayden,* 260 F.3d 1062, 1066 (9th Cir.2001) (citing *United States v. Beraun–Panez,* 812 F.2d 578, 580, *amended by* 830 F.2d 127 (9th Cir.1987) (citing *United States v. Wauneka,* 770 F.2d 1434, 1438 (9th Cir.1985))). Ultimately, we must determine whether there was "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury,* 511 U.S. at 322, 114 S.Ct. 1526 (quoting *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (per curiam) (internal quotation marks omitted)).

■ Applying this circuit's multi-factor test, we conclude that St. Germain was not in custody for *Miranda* purposes when he was questioned by Officer Berger of the Fish and Wildlife Service. First, no "language [was] used to summon" St. Germain. *Hayden,* 260 F.3d at 1066. The two officers approached a group of people who were standing outside of the vehicles

---

* The Honorable Clyde H. Hamilton, Senior United States Circuit Judge for the Fourth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

parked on the mud flats; Officer Berger's questions were initially directed toward the entire group; and he did not ask St. Germain to leave the group and approach the truck until after the location of the firearm had already been disclosed, when he needed assistance moving the seat forward in order to retrieve the rifle.

Second, evaluation of the factor concerning "the extent to which [St. Germain was] confronted with evidence of guilt," *Hayden,* 260 F.3d at 1066, does not support a finding of custody. At no point prior to St. Germain's revelations that he owned the truck, and that it contained a firearm, did Officer Berger confront him with evidence of guilt of possessing a firearm in that location outside of hunting season, or of possession of a firearm by a felon.[1] Indeed, when Officer Berger asked to whom the truck belonged, or whether it contained a gun, he did not even refer to the box labeled as a carton of .22 ammunition that was clearly visible from outside the truck. The situation would be different had he discovered the firearm before questioning the group in general and St. Germain in particular, for then he would be confronting the suspect with evidence of guilt—the gun was found in his vehicle. Here, however, in response to the question "Is there a weapon in the vehicle?" St. Germain responded "No, just a .22." It was only after that exchange that the rifle was retrieved.

Similarly, the third factor in the custody inquiry, the physical surroundings of the interrogation, does not support the district court's conclusion. The encounter took place in public, and the person being interrogated was surrounded by "watchful observers potentially sympathetic to the suspect." *See C. Kim,* 25 F.3d at 1432. Unlike the circumstances in *Beraun–Panez,* the officers did not seek to isolate St. Germain from his companions. *See* 812 F.2d at 582. Even if the federal officers' car blocked the civilians' vehicles and prevented them from driving away, the record shows that the location of the cars was neither remote nor isolated. As such, the environment was not as intimidating or coercive as in cases in which we have concluded a defendant was in custody.

The fourth element, the duration of the detention, is inconclusive. While the government lays great emphasis on the brevity of the encounter, this Court has previously held that a person detained for as little as thirty minutes could be "in custody" for *Miranda* purposes. *Beraun–Panez,* 812 F.2d at 579 (noting that estimates of the duration of the interrogation varied from a half-hour to an hour and a half, without noting if the district court resolved the factual dispute). The officers did not begin questioning St. Germain about the potential firearm possession violation until about twenty minutes after the encounter, until then congenial, began. The short length and congenial nature of their interaction until then do not indicate that St. Germain was in custody.

Last, "the degree of pressure applied to detain the individual," *Hayden,* 260 F.3d at 1066, does not support a finding of custody. The district court correctly found that the officers did not brandish their firearms or make intimidating movements. Although both officers were uniformed and armed, the Supreme Court has held that

---

1. St. Germain's argument, that the other officer's statement to the entire group that it was illegal to park in that location qualified as confrontation with evidence of guilt, is unpersuasive. The cases applying the "evidence of guilt" factor interpret the phrase as referring to evidence of guilt of the offense about which the individual is being questioned or for which he is eventually charged. *See, e.g., Beraun–Panez,* 812 F.2d at 579, 580; *Wauneka,* 770 F.2d at 1438–39; *United States v. Booth,* 669 F.2d 1231, 1237 (9th Cir.1981).

facts common to traffic stops and similar to the circumstances of this case, including the public nature of the interaction and the small number of police officers typically involved, are sufficient to offset "the aura of authority surrounding an armed, uniformed officer." *Berkemer v. McCarty*, 468 U.S. 420, 438, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *see also id.* at 438–39, 104 S.Ct. 3138 ("[T]he atmosphere surrounding an ordinary traffic stop is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in *Miranda* itself, and in the subsequent cases in which we have applied *Miranda.*") (internal citations omitted); *compare Beraun–Panez*, 812 F.2d at 582 ("By sending away the co-worker the officers asserted their dominion over the interrogation site and eliminated any last vestige of a public interrogation. Thus, the questioning occurred in a police-dominated atmosphere where Beraun–Panez was effectively isolated.").

Compared to the cases in which this Court has concluded that a person was "in custody" for *Miranda* purposes, the atmosphere during the encounter between St. Germain and the officers simply does not appear to be sufficiently police-dominated that the encounter could objectively be termed a custodial interrogation. *See, e.g., I. Kim*, 292 F.3d at 977; *Wauneka*, 770 F.2d at 1438–39. The totality of the circumstances does not support the district court's conclusion that St. Germain was subjected to custody, a "restraint on [his] freedom of movement of the degree associated with a formal arrest." *Stansbury*, 511 U.S. at 322, 114 S.Ct. 1526 (internal quotation marks omitted).

■ Although St. Germain was not in custody, his brief detention by Fish and Wildlife officers *did* constitute a seizure. "For purposes of the Fourth Amendment,

a seizure occurs when an officer, through some form of physical force or show of authority, restrains the liberty of a citizen. Such restraint occurs if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Summers*, 268 F.3d 683, 686 (9th Cir.2001) (internal citations and quotation marks omitted). In this case, federal officers parked next to the vehicles belonging to St. Germain and his companions and began questioning them. As it is clear that a reasonable person in his position would not have felt free to leave, the detention of St. Germain was a seizure.

■ Nevertheless, this detention did not violate St. Germain's Fourth Amendment right. An involuntary stop that is analogous to a pedestrian stop (or a *Terry* stop-and-frisk encounter) need not be supported by probable cause, but "must be supported by reasonable suspicion based upon articulable facts that criminal activity is afoot." *Id.* at 686; *see also Kaupp v. Texas*, 538 U.S. 626, 630, 123 S.Ct. 1843, 155 L.Ed.2d 814 (2003) (per curiam) (noting that some stops may be justified on less than probable cause, and citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

Federal regulations applicable to the location of the encounter between Fish and Wildlife officers and St. Germain's group provide:

> Travel in or use of any motorized or other vehicles, including those used on air, water, ice, snow, is prohibited on national wildlife refuges except on designated routes of travel, as indicated by the appropriate traffic control signs or signals and in designated areas posted or delineated on maps by the refuge

manager and subject to [certain] requirements and limitations....

50 C.F.R. § 27.31.

Under the totality of the circumstances that confronted the officers when they arrived at the scene—a group of individuals standing close to two vehicles parked on mud flats, in violation of federal regulations—the detention was justified by the officers' observation of clearly illegal activity.[2] Any additional detention, based on Officer Berger's questioning of St. Germain and the discovery and seizure of the rifle, was also supported by reasonable suspicion of the illegal activity of possession of a weapon on a national wildlife refuge outside of hunting season. *See* 50 C.F.R. § 27.41 ("Carrying, possessing, or discharging firearms, fireworks, or explosives on national wildlife refuges is prohibited unless specifically authorized....").

Since St. Germain was neither in custody when he made incriminating statements, nor subject to an unconstitutional seizure, none of the evidence collected at the scene should have been suppressed.

**REVERSED AND REMANDED.**

---

**2.** St. Germain's contention that his detention was unconstitutional, because the officers lacked probable cause to believe that he knew the location was a refuge and the mud flats were off-limits, is meritless. This argument relies on the incorrect legal standard, and conflates the reasonableness test for investigatory stops with the requirement that the prosecution prove all elements of the crime beyond a reasonable doubt.