**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**



NOV 17 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff - Appellee,<br><br>v.<br><br>RIO YOUNG,<br><br>        Defendant - Appellant. | No. 14-50317<br><br>D.C. No. 2:13-cr-00765-PA-1<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted October 22, 2015
Pasadena, California

Before: KOZINSKI, IKUTA, and OWENS, Circuit Judges.

**1.** Young's first set of statements made in his home should not be

suppressed because Young was not in "custody" under the meaning of *Miranda*.

In the context of at-home interrogations, the "benchmark" for determining whether

---

      *    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

a suspect is in custody is whether the home has become a "police-dominated atmosphere." *United States v. Craighead*, 539 F.3d 1073, 1083 (9th Cir. 2008).

Young's home had not become a police-dominated atmosphere. Although the fact that many officers forcefully entered Young's residence at 6 a.m weighs in favor of finding custody, the totality of the circumstances demonstrates that Young was not in custody. Unlike in *Craighead*, where a detective had his back to the closed door and blocking the suspect's only route out of the storage room, *id.* at 1086, Young was not similarly restrained. The district court found that the door connecting the garage to the main portion of the house remained open and unblocked during the entire interview. Additionally, unlike in *Craighead*, a reasonable person in Young's position would not have felt that he was being isolated from those who could provide moral support. *See id.* at 1087. Young was not moved to the garage to isolate him, but because the rest of the house was too cluttered to arrange three chairs in one area. Moreover, unlike in *Craighead*, 539 F.3d at 1087, *United States v. Kim*, 292 F.3d 969, 971, 977 (9th Cir. 2002), and *United States v. Beraun-Panez*, 812 F.2d 578, 581-82 (9th Cir. 1987), where the police unilaterally imposed the isolation between the suspect and those who could have provided support, Young voluntarily agreed to be interviewed separately from his mother.

It is also significant that Young was told at least twice, including once at the outset of the interview, that he was not under arrest and that he was free to leave. *See Craighead*, 539 F.3d at 1087. Here, the recording confirms that a reasonable person in Young's position would have understood he could take advantage of these admonitions. The tone of the interview was non-confrontational, and the district court found that Young was not frightened or intimidated. *See United States v. Bassignani*, 575 F.3d 879, 884-85 (9th Cir. 2009) (relying on a recording to determine that the interview was conducted in an "open, friendly tone," and the suspect "participated actively").

Because a reasonable person in Young's position would have felt free to terminate the interview and leave the garage, the district court correctly denied Young's motion to suppress his at-home statements.

**2.** Young's first set of statements were also voluntary. Based on the "totality of the circumstances," Young's will was not "overborne" by the agents. *United States v. Jenkins*, 938 F.2d 934, 938 (9th Cir. 1991). Young was an intelligent 20-year-old adult who was attending community college and was knowledgeable about computers. *See United States v. Preston*, 751 F.3d 1008, 1009, 1020 (9th Cir. 2014) (en banc) (finding age and intellectual ability of suspect important in voluntariness determination). He was responsive throughout the

3

interview. *See Doody v. Ryan*, 649 F.3d 986, 994, 1011 (9th Cir. 2011). Although the initial entry into the house was forceful, all agents kept their weapons holstered and did not physically touch Young again after the protective sweep was complete. Additionally, they did not attempt to intimidate or threaten him. There was therefore no "implicit threat of . . . repetition" of any prior physical contact. *Jenkins*, 938 F.2d at 940. Because the district court properly determined that Young's statements were voluntary, it properly denied Young's motion to suppress his second set of statements. *See Oregon v. Elstad*, 470 U.S. 298, 314 (1985).

**3.** Nor did *Missouri v. Seibert*, 542 U.S. 600 (2004), require the district court to suppress the second set of statements. A subsequent administration of *Miranda* warnings will not "remove the conditions that preclude[] admission of [an] earlier statement," *Elstad*, 470 U.S. at 314, if a "two-step interrogation technique was used in a calculated way to undermine the *Miranda* warnings," *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring). As the facts here bear no similarity to the two-step interrogation process found impermissible in *Seibert*, the district court did not err in denying Young's motion to suppress the statements made subsequent to the polygraph examination.

**AFFIRMED**.